[No. B214822. Second Dist., Div. Four. Apr. 9, 2010.]

FRANCISCO GARCIA et al., Plaintiffs and Appellants, v.
WORLD SAVINGS, FSB, Defendant and Respondent.

## COUNSEL

Creed & Elliott, Joseph W. Creed and Lisa R. Elliott for Plaintiffs and Appellants.

Anglin, Flewelling, Rasmussen, Campbell & Trytten, Robin C. Campbell, Mark T. Flewelling and Robert A. Bailey for Defendant and Respondent.

## OPINION

**MANELLA, J.**—Appellants Francisco and Maria Elena Garcia brought suit against their lender, respondent World Savings, FSB,[1] for wrongful foreclosure, breach of contract, promissory estoppel, and unfair business practices.[2] The trial court granted respondent's motion for summary judgment, concluding that the foreclosure was valid, that the breach of contract claim was unsupported by consideration, that the promise allegedly made was insufficiently specific to support promissory estoppel and that the unfair business practices claim had no basis. We reverse with respect to the claim for promissory estoppel, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Undisputed Facts*

Most of the essential facts were not disputed for purposes of summary judgment. In September 2004, appellants purchased a residential property in Artesia using funds obtained from respondent.[3] The property was subject to a

---

[1] As the parties explain in their briefs, respondent underwent a name change and is now known as Wachovia Mortgage, FSB.

[2] The complaint also named as defendants the trustee who handled the foreclosure sale and the third party who purchased the property at the sale. Those parties were subsequently dismissed. As a result of the dismissals, appellants' additional claims for quiet title and conversion (the fourth and eighth causes of action) and the claims seeking to set aside the foreclosure sale (the second and fifth causes of action) were no longer viable. In this appeal, appellants seek to reinstate only the claims for wrongful foreclosure (first cause of action), breach of contract (third cause of action), promissory estoppel (sixth cause of action) and unfair business practices (seventh cause of action).

[3] According to respondent's statement of facts, appellants indicated in their loan application that they intended to occupy the property as their primary residence within a year of the sale.

deed of trust. Between October 2006 and August 2007, appellants failed to make payments on the loan.[4] In January 2007, respondent sent appellants a notice of default. In May 2007, respondent sent appellants a notice of trustee's sale to take place June 21, 2007, later continued by respondent to July 20, 2007.

In July 2007, respondent postponed the trustee's sale to August 20, 2007.[5] That same month, appellants retained Cal Ravana, a mortgage broker, to obtain funds to cure the default by refinancing other property owned by appellants. In mid-August, Ravana spoke with Mike Lara, one of the managers of respondent's foreclosure department, and informed him that appellants had obtained a written conditional loan approval. Ravana faxed the approval to Lara and asked for another postponement. Lara agreed to postpone the sale to August 29.[6] Respondent provided Ravana a reinstatement quote of $26,596.37, the amount which if paid by August 29, would cure the default on the loan.

On August 27, Ravana called Lara to ask for an extension of time until the first week of September. According to Ravana, Lara stated that he would postpone the sale until August 30 and "see where [they] were at after that." When Ravana asked what would happen if appellants' new loan did not close by the 30th, Lara responded that the property "won't go to sale because I have the final say-so and as long as I know that you could close it the first week of August [sic], I'll extend it."[7]

Appellants did not dispute that contention, but presented evidence that they were engaged in construction on the property and that it was not feasible to move in during that timeframe.

[4] Appellants had previously defaulted in June 2006 and cured in September 2006.

[5] Respondent's statement of facts does not explain why it continued the trustee's sale on this or the prior occasion. The complaint alleged that the two postponements were due to negotiations with appellants, who had promised in June to begin the process of refinancing other property they owned in order to cure the default and reinstate the loan. Appellants did not, however, present any evidence concerning these facts in their opposition to summary judgment.

[6] A settlement statement sent to Lara with the conditional approval estimated that the close of escrow would take place September 7, 2007. The settlement statement also indicated that appellants were being charged $25,000 for a loan origination fee, $1,000 for an appraisal, $1,018.90 for title insurance and hundreds of dollars for escrow expenses. The settlement statement further indicated that the funds were to be used to pay off additional creditors, including the IRS and the State of California. The conditional loan approval indicated that appellants would be paying an interest rate of 13 percent.

[7] While the transcript reads "August," the context makes clear that the reference was to September, as does the remainder of Ravana's testimony, in which he confirms that Lara promised to extend the deadline beyond August 30 if necessary to close the loan: " '[D]on't worry, I have the final say-so. If I know that you need a few more days, I'll . . . extend it for you.' "

On August 29, Ravana called Lara's office several times and left messages on his direct line, letting him know that the loan would not close for another week. Lara did not return any of the calls or respond to any of the messages.

The trustee on the deed of trust sold the property at a foreclosure sale on August 30, 2007. Unaware of the foreclosure sale, appellants went forward with the refinancing of their other property. The loan closed on September 7, 2007, a Friday. The company handling the closing sent respondent a check for $26,596.37, which respondent received the following Monday, September 10. Respondent returned the check uncashed.

Upon receiving the check, Ravana called Lara and learned for the first time that the foreclosure sale had gone forward on August 30. According to Ravana, Lara said there had been a "mistake." In a subsequent conversation with Mrs. Garcia, Lara reiterated that a mistake had been made and said that appellants' property was not supposed to have been sold. Lara also told Mrs. Garcia that the matter would be "cleared up" in a few days. Lara acknowledged at his deposition that he spent almost a month in communication with Ravana, Mrs. Garcia and the purchaser "try[ing] to resolve [the] issue."[8]

## B. *Complaint*

In the first cause of action of their complaint, appellants alleged that the foreclosure sale of the property was "wrongful" in violation of Civil Code section 2924 et seq. and that it was "an illegal, fraudulent, and willingly oppressive sale of property under a power of sale contained in a deed of trust." In the third cause of action for breach of contract, appellants alleged that they and respondent "on valuable consideration" entered into an oral agreement whereby respondent agreed to postpone the foreclosure sale of the property. In their sixth cause of action for promissory estoppel, appellants alleged that respondent orally promised to postpone the foreclosure sale and in reliance on that promise, appellants refinanced other property they owned in order to obtain the funds necessary to cure the default and reinstate the loan.

---

[8] Respondent objected to the portions of Mrs. Garcia's and Ravana's depositions offered to establish their postforeclosure conversations with Lara on the grounds that the testimony was hearsay and violated the privilege against introduction of settlement communications. The record indicates that the trial court sustained respondent's objections with respect to Mrs. Garcia's deposition testimony and overruled them with respect to Ravana's. As Mrs. Garcia's account of Lara's statements was admissible under the party admission exception to the hearsay rule, was not privileged, and was essentially corroborated by Ravana's testimony, we will treat Mrs. Garcia's testimony as part of the record.

C. *Respondent's Motion for Summary Judgment*

Respondent moved for summary judgment, contending that (1) there was no agreement to postpone the foreclosure sale past August 30, 2007; (2) appellants gave no consideration for any alleged agreement; (3) the statute of frauds barred the claim; (4) the promise on which appellants allegedly relied was not clear and unambiguous; (5) appellants could not establish reasonable reliance or detriment; (6) appellants did not tender the funds necessary to reinstate the loan; and (7) appellants' unclean hands barred declaratory relief.

D. *Trial Court's Order*

The trial court found that the foreclosure sale was procedurally valid and that the failure of appellants to tender an amount sufficient to cure the default barred their cause of action for wrongful foreclosure. With respect to the cause of action for breach of contract, the court found that appellants' efforts to obtain a loan in order to pay what was due under the deed of trust was not sufficient consideration because it "add[ed] nothing new to the original bargain between the parties." Distinguishing the case of *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665 [111 Cal.Rptr. 693, 517 P.2d 1157] (*Raedeke*), in which the Supreme Court held that the defaulting borrowers' procurement of a prospective buyer for the property constituted good consideration, the court stated: "[U]nlike the [borrowers'] procurement [of a buyer] in *Raedeke*, [appellants'] and [respondent's] original bargain merely contemplated [appellants'] continued payments under the loan, regardless of the source of the funds. Moreover, [appellants] . . . offered no evidence of benefit to [respondent] under the alleged agreement."

With respect to the cause of action for promissory estoppel, the court stated: "To prevail on this claim, [a] plaintiff must prove (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made[;] (3) his reliance must be both reasonable and foreseeable[;] and (4) the party asserting the estoppel must be injured by his reliance. [Citation.] [¶] [Appellants have] offered evidence to show that, at best, a conditional promise was made by Mr. Lara regarding the alleged oral agreement to postpone. [Appellants] have failed to meet their burden of showing a promise by Lara 'clear and unambiguous in its terms.' " With respect to the claim for unfair business practices, the court stated: "Given that [appellants'] Wrongful Foreclosure Cause of Action fails as a matter of law, [appellants] are unable to prove any unfair, unlawful or fraudulent conduct by [respondent] to support a cause of action under Business and Profession Code § 17200."

The court granted respondent's motion for summary judgment. Judgment was entered and this appeal followed.

## DISCUSSION

### A. *Standard of Review*

"Summary judgment is proper when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law." (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 [45 Cal.Rptr.3d 692].) "In reviewing an order granting summary judgment, we exercise our independent judgment, applying the same analysis as the trial court to determine 'whether the moving party established undisputed facts that negate the opposing party's claim or state a complete defense.' " (*Ibid.*, quoting *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].)

"In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue. [Citation.] Because of the drastic nature of the summary judgment procedure and the importance of safeguarding the adverse party's right to a trial, the moving party must make a strong showing. His affidavits are strictly construed and the opposing party's are liberally construed." (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].)

### B. *Consideration/Reliance*

Before we discuss whether Lara's statements to Ravana in their August 27 conversation were sufficiently specific to support either a breach of contract or promissory estoppel, we first discuss whether appellants supplied evidence of consideration—a necessity for a true breach of contract claim. Respondent contends, and the trial court concluded, that the alleged promise to postpone the foreclosure sale was not supported by consideration. Appellants contend that their efforts in obtaining financing on separate property was a detriment to them and a benefit to respondent, ensuring that respondent would be spared the expense of a foreclosure sale. For the reasons discussed, we conclude that although the facts presented established detrimental reliance sufficient to support a claim based on promissory estoppel, there was no exchange of true consideration.

As a general rule, a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly mortgage payments is unenforceable. (*Raedeke, supra*, 10 Cal.3d at p. 673; *California Securities Co. v. Grosse* (1935) 3 Cal.2d 732, 733 [46 P.2d 170]; *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 547 [84 Cal.Rptr.3d 275]; *Sutherland v. Barclays American/Mortgage Corp.* (1997) 53 Cal.App.4th 299, 312 [61 Cal.Rptr.2d 614]; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 121 [92 Cal.Rptr. 851]; *Stafford v. Clinard* (1948) 87 Cal.App.2d 480, 481 [197 P.2d 84].)[9] In *Raedeke*, the case on which appellants rely to support their claim to have provided consideration for the alleged promise to postpone the foreclosure sale, the defaulting borrowers/plaintiffs promised to undertake efforts to find, and did find, a person to buy their property and pay off their loan. If their promise constituted consideration, their claim was for breach of contract, a legal claim to be determined entirely by the jury. The trial court concluded that their claim was equitable because it was dependent on promissory estoppel, and treated the jury's verdict in favor of the plaintiffs as advisory. (See *Raedeke*, at p. 670.) The Supreme Court concluded that the evidence established a true contract supported by consideration on both sides. Noting that although the plaintiffs "appeared to rely almost exclusively upon a promissory estoppel theory [at trial], namely, that [the lender] made a promise to postpone the sale, that plaintiffs relied thereon to their detriment, being misled and lulled into a course of inaction, and that it would be unjust to allow [the lender] to avoid its promise," the pleadings and proof actually supported breach of contract: "Plaintiffs' alleged procurement of a responsible, prospective purchaser at [the lender's] request would constitute good consideration for [the lender's] promise [to postpone the sale], since such procurement was not originally part of the bargain between plaintiffs and [the lender], and constituted both detriment to plaintiffs (through the expenditure of time and energy negotiating with possible purchasers) and benefit to [the lender] (through the potential substitution of a solvent purchaser in place of plaintiffs, rendering

---

[9] In most cases, such promises are deemed unenforceable due to Civil Code section 1698 (section 1698), which essentially provides that to be valid, a contract in writing must be modified by a contract in writing. (*California Securities Co. v. Grosse, supra*, 3 Cal.2d at p. 733; *Sutherland v. Barclays American/Mortgage Corp., supra*, 53 Cal.App.4th at p. 312; *Karlsen v. American Sav. & Loan Assn., supra*, 15 Cal.App.3d at p. 121; *Stafford v. Clinard, supra*, 87 Cal.App.2d at p. 481.) In *Karlsen*, the court also held that a purported oral agreement to postpone a foreclosure sale was not enforceable by the borrower because it was not supported by consideration. (*Karlsen*, at p. 121; see also *Raedeke, supra*, 10 Cal.3d at p. 673.) In *Secrest v. Security National Mortgage Loan Trust*, the court held that enforcement of the lender's promise to forebear from exercising the right of foreclosure was precluded by section 1698 and the statute of frauds. (*Secrest v. Security National Mortgage Loan Trust 2002-2, supra*, 167 Cal.App.4th at pp. 547–548.)

foreclosure unnecessary). Such detriment and benefit each would constitute 'good consideration for a promise' in this state." (*Id.* at pp. 672, 673–674, quoting Civ. Code, § 1605.) Accordingly, the "plaintiffs were entitled to a jury determination of the issues raised . . .'" and "the trial court erred in treating the jury's special findings and verdict as advisory only and in entering its own findings, conclusions and judgment thereon." (*Raedeke*, at p. 675.)

██ Appellants purport to rely on *Raedeke*, but misunderstand its point. Appellants contend that it stands for the proposition that "either a benefit to the promisor or a detriment to the promissee is sufficient to constitute consideration." *Raedeke* stands for the proposition that where the evidence introduced by the plaintiff establishes the existence of true consideration, the issue presented is one of law. As the court below noted, unlike the plaintiffs in *Raedeke* who agreed to locate a solvent purchaser and pay off the loan, appellants promised nothing more than respondent was due under the original loan agreement—monthly payments, plus interest and late fees. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 218, p. 251 ["[D]oing or promising to do what one is already legally bound to do cannot be consideration for a promise."].)

██ The absence of consideration or benefit to the promisor does not, however, defeat a claim based on promissory estoppel.[10] The doctrine of promissory estoppel "make[s] a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for

___

[10] Respondent contends that the statute of frauds and section 1698 preclude enforcement of Lara's alleged promise. A party is estopped to assert the statute of frauds as a defense "where [the] party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment." (*Associated Creditors' Agency v. Haley Land Co.* (1966) 239 Cal.App.2d 610, 617 [49 Cal.Rptr. 1].) In addition, "[i]t is well settled that the rule against varying the terms of a written instrument by parol or seeking to alter a contract in writing other than by a contract in writing or an executed oral agreement, is subject to the exception that a party to a contract may by conduct or representations waive the performance of a condition thereof or be held estopped by such conduct or representations to deny that he has waived such performance." (*Panno v. Russo* (1947) 82 Cal.App.2d 408, 412 [186 P.2d 452]; accord, *Sutherland v. Barclays American/Mortgage Corp., supra,* 53 Cal.App.4th at p. 312, fn. 8 [noting that while § 1698 provides that " '[a] contract in writing' " may be modified " 'by a contract in writing' " or " 'by an oral agreement to the extent that the oral agreement is executed by the parties,' " the statute as amended in appellants' claim is premised on promissory estoppel, and therefore neither § 1698 nor the statute of frauds will defeat their claim. Section 1698 also specifically states that " '[n]othing in this section precludes in an appropriate case the application of rules of law concerning estoppel . . . .' " (italics omitted)].) Accordingly, to the extent appellants' claim is premised on promissory estoppel, neither section 1698 nor the statute of frauds will defeat their claim.

and given in exchange." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462]; accord, *Raedeke, supra,* 10 Cal.3d at p. 672.) "Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." (*Youngman v. Nevada Irrigation Dist., supra,* 70 Cal.2d at p. 249.) " 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' " (*Wilson v. Bailey* (1937) 8 Cal.2d 416, 423 [65 P.2d 770], quoting *Carpy v. Dowdell* (1897) 115 Cal. 677, 687 [47 P. 695].) " 'In such a case, although no consideration or benefit accrues to the person making the promise, he is the author or promoter of the very condition of affairs which stands in his way; and when this plainly appears, it is most equitable that the court should say that they shall so stand. [Citations.]' " (*Wade v. Markwell & Co.* (1953) 118 Cal.App.2d 410, 420 [258 P.2d 497].)

■ Appellants' actions in procuring a high cost, high interest loan by using other property they owned as security were sufficient to support detrimental reliance, although the actions provided no particular benefit to respondent. In numerous cases, similar actions on the part of borrowers have been held to support promissory estoppel. (See, e.g., *Wilson v. Bailey, supra,* 8 Cal.2d at p. 424 [where prior to expiration of option to reconvey property, "at a time when the plaintiff was negotiating with interested third parties for an advance to enable her to exercise the option for the repurchase of property worth five or six times the amount necessary to redeem," defendant assured her "it would not be necessary for her to exercise her option within the given time but that for thirty days he would do nothing in the matter . . . ," court found "[t]he irremediable change of position by the plaintiff in reliance upon the promise of the defendant justified the trial court in refusing to listen to the defendant seeking to deny the truth of his own representations"]; *Sutherland v. Barclays American/Mortgage Corp., supra,* 53 Cal.App.4th at pp. 305–306, 312 (*Sutherland*) [where borrower relied on lender's agent's statement that she could skip three mortgage payments and thereafter used funds that would otherwise have been used to pay mortgage to make necessary earthquake repairs, lender could not insist that missed payments be made in a lump sum at the end of three months]; *Wade v. Markwell & Co., supra,* 118 Cal.App.2d at pp. 419–420 [where plaintiff pledged mink coat to pawnshop as collateral for loan and, after redemption period expired, pawnshop employees told plaintiff she could have an additional week to redeem but sold it within that week, promise was binding without consideration]; *Bank of Fairbanks v. Kaye* (9th Cir. 1955) 227 F.2d 566, 567–568 [where defaulting borrowers procured new purchaser and bank vice-president orally agreed to accept smaller

monthly payments from new purchaser, bank could not foreclose as long as agreed payments were being made].)

Respondent contends that appellants' actions in going forward with the high interest, high cost loan cannot constitute detrimental reliance, because "[appellants] admitted that they 'proceeded with refinancing proceedings' to obtain the funds needed to cure their default in reliance upon two earlier postponements of the trustee's sale by [respondent] until August 20 and August 29." The fact that appellants commenced the application process to obtain a loan on their separate property when they believed the foreclosure would take place in August does not establish that they would have completed the loan had they been aware that the foreclosure sale had not been further postponed. In a similar vein, respondent contends that appellants could not have relied on Lara's alleged promise because appellants were not aware "that Ravana was claiming that Lara had promised a further postponement until the first week of September." Ravana was appellants' agent, dealing with respondent on their behalf. His testimony indicated that he was persuaded Lara had postponed the foreclosure. The fact that Ravana may not have shared with appellants the details of his conversations with Lara does not mean that he and appellants did not continue to believe, as of the date the loan closed, that respondent was complying with its promise to forebear.

Respondent contends that appellants will be unable to establish causation or damage because (1) the check sent to respondent on Friday, September 7, did not reach its offices until the following Monday, September 10; and (2) the amount of the check was insufficient to cure the default as of September 7 or 10 because additional sums were then due. According to respondent, these facts establish that "[e]ven if the foreclosure had been rescheduled [to] September 7, [appellants] would still be in exactly the same position they are today." A somewhat similar situation arose in *Sutherland, supra*, 53 Cal.App.4th 299, where the lender, after allowing the borrower to skip three mortgage payments, returned her next mortgage payment uncashed because it did not include a lump sum for the three additional payments the lender contended were due. Noting that the law does not require a party to engage in futile or useless acts (see Civ. Code, § 3532), the court concluded: "Having returned [the plaintiff's] May 1994 payment, informed her that such 'partial' payments would not be accepted, and declared her in default on May 12, 1994, [the lender] can hardly maintain that [the borrower] should have been making regular payments after the three-month 'stop' period." (*Sutherland*, at p. 313; see also *Wade v. Markwell & Co., supra*, 118 Cal.App.2d at p. 430 [plaintiff, who had been informed her pledged mink coat had been sold, was "excused . . . of the necessity of making a tender of an amount sufficient to cover the loan, interest and charges because the law

does not require the doing of an idle act"].) Unlike the plaintiffs in *Sutherland* and *Wade v. Markwell & Co.*, appellants were not on notice that respondent would refuse any payment from them. However, as the property had been sold August 30, appellants' tender of any sum in an attempt to cure the default and reinstate the loan would have been a "futile or useless act." Having committed a material breach of its alleged promise by failing to postpone the foreclosure sale, respondent cannot be heard to complain that appellants' attempted performance a week later was marginally inadequate. (See *Vineland Homes, Inc. v. Barish* (1956) 138 Cal.App.2d 747, 759 [292 P.2d 941], quoting *Central Oil Co. v. Southern Refining Co.* (1908) 154 Cal. 165, 167 [97 P. 177] [" 'Performance by the party not in fault is always excused by the wrongful refusal to perform by the other party. The rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party.' "].) Appellants tendered the last amount respondent had said would be sufficient to cure the default and reinstate the loan and presented evidence that they had the funds to pay any additional amounts that may have become due by September 7 or 10. Respondent, however, lacked the ability to perform, having transferred the property to a third party through the foreclosure sale.

Raising an argument not made in the trial court, respondent contends that appellants cannot prove detrimental reliance because the preliminary loan documentation attached to the parties' moving and opposition papers below "shows that [appellants] intended to use the proceeds of the refinancing for multiple purposes beyond simply curing the . . . default [to respondent]." It is true that the preliminary settlement statement faxed to Lara along with the conditional loan approval indicated that other creditors were to be paid out of the loan proceeds. However, respondent did not raise this fact in support of its motion for summary judgment and appellants had no reason to present countervailing evidence on this point. Appellants might have obtained a loan on more favorable terms at a later time had they not been faced with the need to move quickly to cure the default on the Artesia property. At a minimum, appellants could have borrowed a lesser amount had they known that respondent did not intend to delay the foreclosure and that the Artesia property was already lost.

Finally, respondent contends that appellants are precluded from pursuing their claim for promissory estoppel by unclean hands.[11] Respondent asserts that appellants misrepresented in their loan application that they

---

[11] We note that respondent raised unclean hands in their moving papers below, but only with respect to appellants' declaratory relief claim.

intended to reside in the Artesia property. "The doctrine of unclean hands does not deny relief to a plaintiff guilty of any past misconduct; only misconduct directly related to the matter in which he seeks relief triggers the defense." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 974 [90 Cal.Rptr.2d 743].) "The misconduct that brings the unclean hands doctrine into play must relate directly to the transaction concerning which the complaint is made. It must infect the cause of action involved and affect the equitable relations between the litigants." (*Id.* at p. 984.) Neither in its brief on appeal nor in its moving papers below has respondent made clear the connection, if any, between any possible misrepresentation in the loan application and the claims asserted here. Moreover, the decision whether to apply the defense based on the facts presented is a matter within the trial court's discretion. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447 [99 Cal.Rptr.2d 678].) The trial court issued no ruling on this point, and we will not do so for the first time on appeal.

Having concluded that appellants sufficiently established detrimental reliance, we now turn to whether Lara's statements to Ravana constituted a sufficiently specific promise to support promissory estoppel.

### C. *Sufficiency of Promise to Postpone Foreclosure*

■ "[A] promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice . . . ." (*Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 277 [137 Cal.Rptr. 855].) The promise must, in addition, be "clear and unambiguous in its terms." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 [131 Cal.Rptr. 836].) "Estoppel cannot be established from . . . preliminary discussions and negotiations." (*National Dollar Stores v. Wagnon* (1950) 97 Cal.App.2d 915, 919 [219 P.2d 49].) Moreover, unlike a party seeking to establish a promise in a pure breach of contract context, a party seeking to establish promissory estoppel cannot rely on extrinsic evidence to explain an ambiguous statement. (Compare *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141–144 [127 Cal.Rptr.2d 145] [issue of parties' manifestation of mutual assent to contract to grant stock options presented questions of fact not susceptible to summary judgment] with *Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1186 [81 Cal.Rptr.2d 39] [where plaintiffs contended ambiguous statement in letter from defendant constituted a binding promise under theory of promissory estoppel, trial court properly granted summary

judgment].) As the appellate court explained in *Lange*, "[e]xtrinsic evidence is relevant . . . in interpreting a written instrument only if the instrument's language is ambiguous. . . . It follows that if extrinsic evidence is needed to interpret a promise, then obviously the promise is not clear and unambiguous." (*Lange*, at p. 1186, citations omitted.)

█ Here, Ravana testified that he called Lara in the last week of August, expressly requesting an extension to the first week in September, when the Garcias' pending loan was set to close. When Lara agreed to postpone the sale for a day and Ravana expressed concern that the loan would not close by then, Lara responded by assuring Ravana that the property would not be sold, as he (Lara) had the final say-so and would extend any sale, so long as the loan closed in the first week of September.[12] A day or two later, Ravana called Lara's direct line and left several messages informing him that appellants would, indeed, need the additional time, as the loan would likely close the first week of September as Ravana had earlier predicted. Under these circumstances, we conclude Lara's promise was sufficiently definite to support promissory estoppel. To be enforceable, a promise need only be " 'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' " (*Bustamante v. Intuit, Inc., supra*, 141 Cal.App.4th at p. 209, quoting *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770 [23 Cal.Rptr.2d 810].) It is only where " 'a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, [that] there is no contract.' " (*Bustamante v. Intuit, Inc., supra*, at p. 209, quoting *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 [71 Cal.Rptr.2d 265].) Lara's alleged statement that if the Garcias needed additional time in the first week of September to close the loan, he would postpone the sale to permit them to do so was sufficiently definite to determine the scope of the promise and respondent's obligation. (See *US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 131 [111 Cal.Rptr.2d 689] [promise to use "best efforts" to acquire land sufficient to support promissory estoppel].)

█ The trial court relied on the fact that the promise was "conditional" to support its conclusion. However, the fact that a promise is conditional does not render it unenforceable or ambiguous. (See, e.g., *Martin v. World Savings & Loan Assn.* (2001) 92 Cal.App.4th 803, 809 [112 Cal.Rptr.2d 225] [court

---

[12] As noted in footnote 7, *ante*, Ravana's reference to Lara's assurance that "as long as I know that you could close [the loan] the first week of August, I'll extend it" was clearly intended to refer to September, as the context of the conversations makes clear.

enforced borrower's promise that "if" he obtained earthquake insurance, lender would be loss payee]; *Anchor Cas. Co. v. Surety Bond* (1962) 204 Cal.App.2d 175, 179, 182 [22 Cal.Rptr. 278] [where lender stated to surety that "if" it made construction loan to developer, lender would withhold $55,000 of funds and disburse only for city-required improvements, once loan was made, "th[e] promise became absolute"].) Here, the only condition precedent to Lara's alleged promise to postpone the sale was the Garcias' need for additional time to close the pending loan. That the condition might not occur did not render the promise unenforceable.

Respondent emphasizes that Ravana did not speak with Lara on August 29 and contends that "a further postponement of the sale until the first week of September was conditioned upon Ravana['s] speaking with Lara again and persuading him that [appellants] actually required another postponement." We disagree. While it may fairly be implied that Ravana was required to notify Lara of the needed extension, there is ample evidence he did so. According to his deposition testimony, starting August 29, Ravana called Lara's direct line repeatedly to advise him the Garcias' loan would be closing the first week of September and would need the extension Lara had promised. No more was required.

■ Moreover, Lara's silence in the face of his alleged prior promise to provide additional time if needed could reasonably be viewed as an affirmative response. (See *Wilson v. Bailey, supra*, 8 Cal.2d at p. 423 [to establish grounds for estoppel, " ' "[t]he person against whom the estoppel is asserted must *by his silence* or his representation, have created a belief of the existence of a state of facts which would be unconscionable to deny . . ." ' " (italics added)]; *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 722 [79 Cal.Rptr. 319, 456 P.2d 975] [silence in face of offer viewed as acceptance where relationship between parties or previous course of dealing permits].) Clearly, Ravana interpreted Lara's silence in that manner, and the evidence presented by appellants supports that Lara intended to convey agreement, as he later told both Ravana and Mrs. Garcia that the foreclosure sale had been a "mistake," specifically told Mrs. Garcia that he had given appellants more time, and acknowledged spending nearly a month after the sale communicating with Ravana, Mrs. Garcia and the purchaser in an attempt to "resolve [the] issue." In sum, appellants presented sufficient evidence of a definite promise from Lara to support their promissory estoppel claim, and the trial court's summary adjudication of this claim must be reversed.

### D. *Wrongful Foreclosure/Unfair Business Practices*

The basis for appellants' first cause of action entitled "Wrongful Foreclosure" is unclear from the complaint, the opposition to summary judgment or

their brief on appeal. Appellants cited Civil Code section 2924 et seq. in the complaint—the statutory provisions which govern nonjudicial foreclosures—but did not indicate which, if any, were violated. In their opposition to the summary judgment motion and in their brief on appeal, appellants purport to rely on *Raedeke, supra,* 10 Cal.3d 665, but only for the proposition that appellants and respondent exchanged sufficient legal consideration to support a breach of contract claim. As discussed, *Raedeke* does not support their contention in this regard. In any event, the claim at issue in *Raedeke* was for "breach of . . . oral promise to postpone the sale," not wrongful foreclosure. (*Id.* at p. 672.)

■ We surmise from appellants' reply brief that they may be attempting to assert a claim similar to that in *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428 [129 Cal.Rptr.2d 436], where the lender allegedly agreed, as in *Raedeke,* to postpone foreclosure after the defaulting borrower procured a new purchaser and the purchaser agreed to pay off the loan by a certain date. As a general rule, if the funds necessary to reinstate or pay off a defaulted loan secured by a deed of trust are received by the lender prior to the foreclosure sale, the foreclosure sale is invalid and may be set aside, even if the purchaser was an innocent third party. (See, e.g., *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 711–714 [28 Cal.Rptr.3d 825] [borrower appeared at branch of lender and paid sum necessary to reinstate loan; foreclosure sale occurring four days later was invalid].) In *Nguyen,* however, the court held that because the funds to pay off the loan—apparently sent on the day of the foreclosure—were not received by the lender until three days after the property was sold to a third party, the foreclosure could not be set aside. (*Nguyen,* at pp. 435, 443–445.) Appellants' funds also were received too late to invalidate the foreclosure, so *Nguyen* (and *Bank of America v. La Jolla Group II*) are of no assistance to them. In any event, appellants have dismissed the third party purchaser and, without the purchaser, cannot obtain the remedy of setting aside the sale and recovering the property.[13]

With respect to appellant's claim for unfair business practices, appellants contend that it should be reinstated only if the claim for wrongful foreclosure is reinstated. Accordingly, we reinstate neither claim.

---

[13] Appellants specifically state in their reply brief that they do not wish to set aside the foreclosure sale.

## DISPOSITION

The judgment is reversed with respect to the claim for promissory estoppel only. In all other respects the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion. Appellants are entitled to costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied May 5, 2010, and respondent's petition for review by the Supreme Court was denied June 23, 2010, S182826.