Opinion
MALLANO, P. J.
As alleged in this case, plaintiff, a married woman, obtained an adjustable rate loan from a bank to purchase real property secured by a deed of trust on her residence. About two years into the loan, she could not afford the monthly payments and filed for bankruptcy under chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 701-784). She intended to convert the chapter 7 proceeding to a chapter 13 proceeding (11 U.S.C. §§ 1301-1330) and to enlist the financial assistance of her husband to reinstate the loan, pay the arrearages, and resume the regular loan payments.
Plaintiff contacted the bank, which promised to work with her on a loan reinstatement and modification if she would forgo further bankruptcy proceedings. In reliance on that promise, plaintiff did not convert her bankruptcy case to a chapter 13 proceeding or oppose the bank’s motion to lift the bankruptcy stay. While the bank was promising to work with plaintiff, it was simultaneously complying with the notice requirements to conduct a sale under the power of sale in the deed of trust, commonly referred to as a nonjudicial foreclosure or foreclosure. (See Civ. Code, §§ 2924, 2924a-2924k.)
The bankruptcy court lifted the stay. But the bank did not work with plaintiff in an attempt to reinstate and modify the loan. Rather, it completed the foreclosure.
Plaintiff filed this action against the bank, alleging a cause of action for promissory estoppel, among others. She argued the bank’s promise to work with her in reinstating and modifying the loan was enforceable, she had relied on the promise by forgoing bankruptcy protection under chapter 13, and the bank subsequently breached its promise by foreclosing. The trial court dismissed the case on demurrer.
*222 We conclude (1) plaintiff could have reasonably relied on the bank’s promise to work on a loan reinstatement and modification if she did not seek relief under chapter 13, (2) the promise was sufficiently concrete to be enforceable, and (3) plaintiff’s decision to forgo chapter 13 relief was detrimental because it allowed the bank to foreclose on the property. Contrary to the bank’s contention that plaintiff’s use of the Bankruptcy Code was ipso facto bad faith, chapter 13 is “ ‘uniquely tailored to protect homeowners’ primary residences [from foreclosure].’ ” (In re Willette (Bankr. D.Vt. 2008) 395 B.R. 308, 322.)
I
BACKGROUND
The facts of this case are taken from the allegations of the operative complaint, which we accept as true. (See Hensler v. City of Glendale (1994) 8 Cal.4th 1, 8, fn. 3 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)
A. Complaint
This action was filed on April 1, 2009. Two months later, a first amended complaint was filed. On August 17, 2009, after the sustaining of a demurrer, a second amended complaint (complaint) was filed. The complaint alleged as follows.
Plaintiff Claudia Aceves, a married woman, obtained a loan from Option One Mortgage Corporation (Option One) on April 20, 2006. The loan was evidenced by a note secured by a deed of trust on Aceves’s residence. Aceves borrowed $845,000 at an initial rate of 6.35 percent. After two years, the rate became adjustable. The term of the loan was 30 years. Aceves’s initial monthly payments were $4,857.09.
On March 25, 2008, Option One, the mortgagee, transferred its entire interest under the deed of trust to defendant U.S. Bank National Association (U.S. Bank), as the “Trustee for the Certificateholders of Asset Backed Securities Corporation Home Equity Loan Trust, Series OOMC 2006-HE5.” The transfer was effected through an “Assignment of Deed of Trust.” U.S. Bank therefore became Option One’s assignee and the beneficiary of the deed of trust. Also on March 25, 2008, U.S. Bank, by way of a “Substitution of Trustee,” designated Quality Loan Service Corporation (Quality Loan Service) as the trustee under the deed of trust. The Substitution of Trustee was signed by the bank’s attorney-in-fact.
*223 In January 2008, Aceves could no longer afford the monthly payments on the loan. On March 26, 2008, Quality Loan Service recorded a “Notice of Default and Election to Sell Under Deed of Trust.” (See Civ. Code, § 2924.) Shortly thereafter, Aceves filed for bankruptcy protection under chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 701-784), imposing an automatic stay on the foreclosure proceedings (see 11 U.S.C. § 362(a)). Aceves contacted U.S. Bank and was told that, once her loan was out of bankruptcy, the bank “would work with her on a mortgage reinstatement and loan modification.” She was asked to submit documents to U.S. Bank for its consideration.
Aceves intended to convert her chapter 7 bankruptcy case to a chapter 13 case (see 11 U.S.C. §§ 1301-1330) and to rely on the financial resources of her husband “to save her home” under chapter 13. In general, chapter 7, entitled “Liquidation,” permits a debtor to discharge unpaid debts, but a debtor who discharges an unpaid home loan cannot keep the home; chapter 13, entitled “Adjustment of Debts of an Individual with Regular Income,” allows a homeowner in default to reinstate the original loan payments, pay the arrearages over time, avoid foreclosure, and retain the home. (See 1 Collier on Bankruptcy (16th ed. 2010) ff 1.07[l][a] to 1.07[l][g], 1.07[5][a] to 1.07[5][e], pp. 1-25 to 1-30, 1-43 to 1-45.)
U.S. Bank filed a motion in the bankruptcy court to lift the stay so it could proceed with a nonjudicial foreclosure.
On or about November 12, 2008, Aceves’s bankruptcy attorney received a letter from counsel for the company servicing the loan, American Home Mortgage Servicing, Inc. (American Home). The letter requested that Aceves’s attorney agree in writing to allow American Home to contact Aceves directly to “explore Loss Mitigation possibilities.” Thereafter, Aceves contacted American Home’s counsel and was told they could not speak to her before the motion to lift the bankruptcy stay had been granted.
In reliance on U.S. Bank’s promise to work with her to reinstate and modify the loan, Aceves did not oppose the motion to lift the bankruptcy stay and decided not to seek bankruptcy relief under chapter 13. On December 4, 2008, the bankruptcy court lifted the stay. On December 9, 2008, although neither U.S. Bank nor American Home had contacted Aceves to discuss the reinstatement and modification of the loan, U.S. Bank scheduled Aceves’s home for public auction on January 9, 2009.
*224 On December 10, 2008, Aceves sent documents to American Home related to reinstating and modifying the loan. On December 23, 2008, American Home informed Aceves that a “negotiator” would contact her on or before January 13, 2009—four days after the auction of her residence. On December 29, 2008, Aceves received a telephone call from “Samantha,” a negotiator from American Home. Samantha said to forget about any assistance in avoiding foreclosure because the “file” had been “discharged” in bankruptcy. On January 2, 2009, Samantha contacted Aceves again, saying that American Home had mistakenly decided not to offer her any assistance: American Home incorrectly thought Aceves’s loan had been discharged in bankruptcy; instead, Aceves had merely filed for bankruptcy. Samantha said that, as a result of American Home’s mistake, it would reconsider a loss mitigation proposal. On January 8, 2009, the day before the auction, Samantha called Aceves’s bankruptcy attorney and stated that the new balance on the loan was $965,926.22; the new monthly payment would be more than $7,200; and a $6,500 deposit was due immediately via Western Union. Samantha refused to put any of those terms in writing. Aceves did not accept the offer.
On January 9, 2009, Aceves’s home was sold at a trustee’s sale to U.S. Bank. On February 11, 2009, U.S. Bank served Aceves with a three-day notice to vacate the premises and, a month later, filed an unlawful detainer action against her and her husband (U.S. Bank, N.A. v. Aceves (Super. Ct. L.A. County, 2009, No. 09H00857)). Apparently, Aceves and her husband vacated the premises during the eviction proceedings.
U.S. Bank never intended to work with Aceves to reinstate and modify the loan. The bank so promised only to convince Aceves to forgo further bankruptcy proceedings, thereby permitting the bank to lift the automatic stay and foreclose on the property.
The complaint alleged causes of action against U.S. Bank for quiet title, slander of title, fraud, promissory estoppel, and declaratory relief. It also sought to set aside the trustee’s sale and to void the trustee’s deed upon the sale of the home.
B. Demurrer
U.S. Bank filed a demurrer separately attacking each cause of action and the requested remedies. Aceves filed opposition.
At the hearing on the demurrer, Aceves’s attorney argued that Aceves and her husband “could have saved their house through bankruptcy,” but “due to the promises of the bank, they didn’t go those routes to save their house. [][]... [][] . . . [T]hat’s the whole essence of promissory estoppel, [f] . . . [f] *225 Prior to [American Home’s November 12, 2008] letter, there’s numerous phone contacts and conversations with [American Home], which was the agent for U.S. Bank, regarding, ‘Yes, once we get leave, we will work with you,. . . and they did not work with her at all.’ ” The trial court replied: “The foreclosure took place. There’s no promissory fraud or anything that deluded [Aceves] under the circumstances.”
On October 29, 2009, the trial court entered an order sustaining the demurrer without leave to amend and a judgment in favor of U.S. Bank. Aceves filed this appeal.
II
DISCUSSION
Aceves focuses primarily on her claim for promissory estoppel, arguing it is adequately pleaded. She also contends her other claims should have survived the demurrer. U.S. Bank counters that the trial court properly dismissed the case.
We conclude Aceves stated a claim for promissory estoppel. As alleged, in reliance on a promise by U.S. Bank to work with her in reinstating and modifying the loan, Aceves did not attempt to save her home under chapter 13. Yet U.S. Bank then went forward with the foreclosure and did not commence negotiations toward a possible loan solution. As demonstrated in its brief on appeal, U.S. Bank fails to appreciate that chapter 13 may be used legitimately to assist a borrower in reinstating a home loan and avoiding foreclosure after a default.
All but one of Aceves’s remaining claims were properly dismissed. She adequately pleaded a claim for fraud. But the record does not support her other claims or requests for relief: The complaint does not allege any irregularities in the foreclosure process that would permit the trial court to void the deed of sale or otherwise invalidate the foreclosure.
A. Promissory Estoppel
“ ‘The elements of a promissory estoppel claim are “(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.” ’ ” (Advanced Choices, Inc. v. State Dept. of Health Services (2010) 182 Cal.App.4th 1661, 1672 [107 Cal.Rptr.3d 470].)
*226 1. Clear and Unambiguous Promise
“ ‘[A] promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice The promise must, in addition, be ‘clear and unambiguous in its terms.’ ” (Garcia v. World Savings, FSB (2010) 183 Cal.App.4th 1031, 1044 [107 Cal.Rptr.3d 683], citation omitted.) “To be enforceable, a promise need only be ‘ “definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.” ’ ... It is only where ‘ “a supposed ‘contract’ does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, [that] there is no contract.” ’ ” (Id. at p. 1045, citation omitted.) “[T]hat a promise is conditional does not render it unenforceable or ambiguous.” (Ibid.)
U.S. Bank agreed to “work with [Aceves] on a mortgage reinstatement and loan modification” if she no longer pursued relief in the bankruptcy court. This is a clear and unambiguous promise. It indicates that U.S. Bank would not foreclose on Aceves’s home without first engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms.
U.S. Bank’s discussion of Laks v. Coast Fed. Sav. & Loan Assn. (1976) 60 Cal.App.3d 885 [131 Cal.Rptr. 836] misses the mark. There, the plaintiffs applied for a loan and relied on promissory estoppel in arguing that the lender was bound to make the loan. The Court of Appeal affirmed the dismissal of the case on demurrer, explaining that the alleged promise to make a loan was unclear and ambiguous because it did not include all of the essential terms of a loan, including the identity of the borrower and the security for the loan. In contrast, Aceves contends U.S. Bank promised but failed to engage in negotiations toward a solution of her loan problems. Thus, the question here is simply whether U.S. Bank made and kept a promise to negotiate with Aceves, not whether, as in Laks, the bank promised to make a loan or, more precisely, to modify a loan. Aceves does not, and could not, assert she relied on the terms of a modified loan agreement in forgoing bankruptcy relief. She acknowledges that the parties never got that far because U.S. Bank broke its promise to negotiate with her toward a mutually agreeable modification. While' Laks turned on the sufficiency of the terms of a loan, Aceves’s claim rests on whether U.S. Bank engaged in the promised negotiations. The bank either did or did not negotiate.
*227 Further, U.S. Bank asserts that it offered Aceves a loan modification, referring to the offer it made the day before the auction. That assertion, however, is of no avail. Aceves’s promissory estoppel claim is not based on a promise to make a unilateral offer but on a promise to negotiate in an attempt to reach a mutually agreeable loan modification. And, even assuming this case involved a mere promise to make a unilateral offer, we cannot say the bank’s offer satisfied such a promise in light of the offer’s terms and the circumstances under which it was made.
2. Reliance on the Promise
Aceves relied on U.S. Bank’s promise by declining to convert her chapter 7 bankruptcy proceeding to a chapter 13 proceeding, by not relying on her husband’s financial assistance in developing a chapter 13 plan, and by not opposing U.S. Bank’s motion to lift the bankruptcy stay.
3. Reasonable and Foreseeable Reliance
“ ‘Promissory estoppel applies whenever a “promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance” would result in an “injustice” if the promise were not enforced . . . .’ ” (Advanced Choices, Inc. v. State Dept. of Health Services, supra, 182 Cal.App.4th at pp. 1671-1672, citation omitted, italics added.)
“[A] party plaintiff’s misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance .... ‘If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, ... he will be denied a recovery.’ ” (Kruse v. Bank of America (1988) 202 Cal.App.3d 38, 54 [248 Cal.Rptr. 217], citation omitted.) A mere “hopeful expectation^ cannot be equated with the necessary justifiable reliance.” (Id. at p. 55.)
We conclude Aceves reasonably relied on U.S. Bank’s promise; U.S. Bank reasonably expected her to so rely; and it was foreseeable she would do so. U.S. Bank promised to work with Aceves to reinstate and modify the loan. That would have been more beneficial to Aceves than the relief she could have obtained under chapter 13. The bankruptcy court could have reinstated the loan—permitted Aceves to cure the default, pay the arrearages, and resume regular loan payments—but it could not have modified the terms of the loan, for example, by reducing the amount of the regular monthly payments or extending the life of the loan. (See 11 U.S.C. § 1322(b)(2), (3), (5), (c)(1); 8 Collier on Bankruptcy, supra, ff 1322.06[1], 1322.07[2], 1322.09[l]-[6], 1322.16 & fn. 5, pp. 1322-23 to 1322-24, 1322-31 to *228 1322-32, 1322-34 to 1322-42, 1322-55 to 1322-56.) By promising to work with Aceves to modify the loan in addition to reinstating it, U.S. Bank presented Aceves with a compelling reason to opt for negotiations with the bank instead of seeking bankruptcy relief. (See Garcia v. World Savings, FSB, supra, 183 Cal.App.4th at pp. 1041-1042 [discussing justifiable reliance].)
We emphasize that this case involves a long-term loan secured by a deed of trust, one in which the last payment under the loan schedule would be due after the final payment under a bankruptcy plan. (See 11 U.S.C. § 1322(b)(5).) Aceves had more than 28 years left on the loan, and a bankruptcy plan could not have exceeded five years. In contrast, if a case involves a short-term loan, where the last payment under the original loan schedule is due before the final payment under the bankruptcy plan, the bankruptcy court has the authority to modify the terms of the loan. (See 11 U.S.C. § 1322(c)(2); In re Paschen (11th Cir. 2002) 296 F.3d 1203, 1205-1209; 8 Collier on Bankruptcy, supra, | 1322.17, pp. 1322-57 to 1322-58; March et al., Cal. Practice Guide: Bankruptcy (The Rutter Group 2010) f 13:396, p. 13-45 (rev. # 1, 2010); compare March, ¶¶ 13:385 to 13:419, pp. 13-42 to 13-48 (rev. # 1, 2010) [discussing short-term debts] with id., ¶¶ 13:440 to 13:484, pp. 13-49 to 13-54 (rev. # 1, 2010) [discussing long-term debts].) The modification of a short-term loan may include “lien-stripping,” that is, the bifurcation of the loan into secured and unsecured components based on the value of the home, with the unsecured component subject to a “cramdown.” (See In re Paschen, supra, 296 F.3d at pp. 1205-1209; 8 Collier on Bankruptcy, supra, | 1322.17, pp. 1322-57 to 1322-58; see also March et al., Cal. Practice Guide: Bankruptcy, supra, || 13:370 to 13:371.1, p. 13-41 (rev. # 1, 2010) [discussing lienstripping].) If a lien is “stripped down,” the lender is “only assured of receiving full [payment] for the secured portion of the [bankruptcy] claim.” (In re Paschen, supra, 296 F.3d at p. 1206.)
4. Detriment
U.S. Bank makes no attempt to hide its disdain for the protections offered homeowners by chapter 13, referring disparagingly to Aceves’s bankruptcy case as “bad faith.” But “Chapter 13’s greatest significance for debtors is its use as a weapon to avoid foreclosure on their homes. Restricting initial . . . access to Chapter 13 protection will increase foreclosure rates for financially distressed homeowners. Loss of homes hurts not only the individual homeowner but also the family, the neighborhood and the community at large. Preserving access to Chapter 13 will reduce this harm.
“Chapter 13 bankruptcies do not result in destruction of the interests of traditional mortgage lenders. Under Chapter 13, a debtor cannot discharge a *229 mortgage debt and keep her home. Rather, a Chapter 13 bankruptcy offers the debtor an opportunity to cure a mortgage delinquency over time—in essence it is a statutorily mandated payment plan—but one that requires the debtor to pay precisely the amount she would have to pay to the lender outside of bankruptcy. Under Chapter 13, the plan must provide the amount necessary to cure the mortgage default, which includes the fees and costs allowed by the mortgage agreement and by state law. Mortgage lenders who are secured only by an interest in the debtor’s residence enjoy even greater protection under 11 U.S.C. § 1322(b)(2) .... Known as the ‘anti-modification provision,’ [section] 1322(b)(2) bars a debtor from modifying any rights of such a lender—including the payment schedule provided for under the loan contract .... [(Cf. 11 U.S.C. § 1322(c)(2) [bankruptcy court has authority to modify rights of lender, including payment schedule, in cases involving short-term mortgages]; see pt. H.A.3., ante.)]
“Even though a debtor must, through reinstatement of her delinquent mortgage by a Chapter 13 repayment plan . . . , pay her full obligation to the lender, Chapter 13 remains the only viable way for most mortgage debtors to cure defaults and save their homes. Mortgage lenders are extraordinarily unwilling to accept repayment schedules outside of bankruptcy .... There is no history to support any claim that lenders will accommodate the need for extended workouts without the pressure of bankruptcy as an option for consumer debtors. Reducing the availability of [C]hapter 13 protection to mortgage debtors is most likely to result in higher foreclosure rates, not in greater flexibility by lenders.” (DeJarnatt, Once Is Not Enough: Preserving Consumers’ Rights to Bankruptcy Protection (Spring 1999) Ind. L.J. 455, 495-496, fn. omitted.)
“It is unrealistic to think mortgage companies will do workouts without the threat of the debtor’s access to Chapter 13 protection. The bankruptcy process is still very protective of the mortgage industry. To the extent that the existence of Chapter 13 protections increases the costs of mortgage financing to all consumers, it can and should be viewed as an essential form of consumer insurance . . . .” (DeJarnatt, Once Is Not Enough: Preserving Consumers’ Rights to Bankruptcy Protection, supra, Ind. L.J. at p. 499, fn. omitted.)
We mention just a few of the rights Aceves sacrificed by deciding to forgo a chapter 13 proceeding. First, although Aceves initially filed a chapter 7 proceeding, “[a] chapter 7 debtor may convert to a case[] under [chapter 13] at any time without court approval, so long as the debtor is eligible for relief under the new chapter.” (1 Collier on Bankruptcy, supra, f 1.06, p. 1-24, italics added; accord, March et al., Cal. Practice Guide: Bankruptcy, supra, H 5:1700 to 5:1701, 5:1715 to 5:1731, pp. 5(H)-1 (rev. # 1, 2010), 5(ff)-3 to 5(II)-5 (rev. # 1, 2010); see 11 U.S.C. § 706(a).) In addition, Aceves *230 could have “cured” the default, reinstating the loan to predefault conditions. (See In re Frazer (Bankr. 9th Cir. 2007) 377 B.R. 621, 628; In re Taddeo (2d Cir. 1982) 685 F.2d 24, 26-28; 11 U.S.C. § 1322(b)(5); March et al., Cal. Practice Guide: Bankruptcy, supra, f 13:450, p. 13-50.) She also would have had a “reasonable time”—a maximum of five years-—to make up the arrearages. (11 U.S.C. § 1322(b)(5), (d); see 8 Collier on Bankruptcy, supra, 1 1322.09[5], pp. 1322-39 to 1322-40; March et al., Cal. Practice Guide: Bankruptcy, supra, 1 13:443, p. 13-49.) And, by complying with a bankruptcy plan, Aceves could have prevented U.S. Bank from foreclosing on the property. (See 8 Collier on Bankruptcy, supra, ffl 1322.09[1] to 1322.09[3], 1322.16, pp. 1322-34 to 1322-37, 1322-55 to 1322-56.) “ 1 “Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family house.” ’ ” (In re King (Bankr. N.D.Fla. 1991) 131 B.R. 207, 211; see also March et al., Cal. Practice Guide: Bankruptcy, supra, ¶¶ 8:1050, 8:1375 to 8:1411, pp. 8(II)-1 (rev. # 1, 2010), 8(II)-42 to 8(II)-47 (revs. # 1, 2009, 2010) [discussing automatic stay]; In re Hoggle (11th Cir. 1994) 12 F.3d 1008, 1008-1012 [affirming district court order denying lender’s motion for relief from automatic stay]; Lamarche v. Miles (E.D.N.Y. 2009) 416 B.R. 53, 55-62 [affirming bankruptcy court order denying landlord’s motion to set aside automatic stay]; In re Gatlin (Bankr. W.D.Ark. 2006) 357 B.R. 519, 520-523 [denying lender’s motion for relief from automatic stay].)
U.S. Bank maintains that even if Aceves had pursued relief under chapter 13, she could not have afforded the payments under a bankruptcy plan. But the complaint alleged that, with the financial assistance of her husband, Aceves could have saved her home under chapter 13. We accept the truth of Aceves’s allegations over U.S. Bank’s speculation. (See Hensler v. City of Glendale, supra, 8 Cal.4th at p. 8, fn. 3.)
5. Absence of Consideration
U.S. Bank argues that an oral promise to postpone either a loan payment or a foreclosure is unenforceable. We have previously addressed that argument, stating: “ ‘[I]n the absence of consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under [Civil Code] section 1698.’ (Raedeke v. Gibraltar Sav. & Loan Assn. (1974) 10 Cal.3d 665, 673 [111 Cal.Rptr. 693, 517 P.2d 1157], italics added.) The same holds true for an oral promise to allow the postponement of mortgage payments. (California Securities Co. v. Grosse (1935) 3 Cal.2d 732, 733 [46 P.2d 170] . . . [applying Civ. Code, § 1698].) However, \ . . the doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise .... “The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration *231 in the usual sense of something bargained for and given in exchange (Raedeke, supra, 10 Cal.3d at p. 672.) ‘ “Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement . . . .” ’ ” (Sutherland v. Barclays American/Mortgage Corp. (1997) 53 Cal.App.4th 299, 312 [61 Cal.Rptr.2d 614]; accord, Garcia v. World Savings, FSB, supra, 183 Cal.App.4th at pp. 1039-1041.) We further commented: “When Raedeke and California Securities Co. were decided, Civil Code section 1698 provided in its entirety: ‘A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.’... In 1976, a new section 1698 was enacted which states in part: ‘A contract in writing may be modified by a contract in writing . . . [or] by an oral agreement to the extent that the oral agreement is executed by the parties .... Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel....’” (Sutherland v. Barclays American/Mortgage Corp., supra, 53 Cal.App.4th at p. 312, fn. 8, citation omitted.) Our earlier analysis in Sutherland applies here.
Finally, a promissory estoppel claim generally entitles a plaintiff to the damages available on a breach of contract claim. (See Toscano v. Greene Music (2004) 124 Cal.App.4th 685, 692-693 [21 Cal.Rptr.3d 732].) Because this is not a case where the homeowner paid the funds needed to reinstate the loan before the foreclosure, promissory estoppel does not provide a basis for voiding the deed of sale or otherwise invalidating the foreclosure. (See Garcia v. World Savings, FSB, supra, 183 Cal.App.4th at p. 1047, distinguishing Bank of America v. La Jolla Group II (2005) 129 Cal.App.4th 706, 711-714 [28 Cal.Rptr.3d 825].)
B. Remaining Claims
The elements of fraud are similar to the elements of promissory estoppel, with the additional requirements that a false promise be made and that the promisor know of the falsity when making the promise. (See McClain v. Octagon Plaza, LLC (2008) 159 Cal.App.4th 784, 792-794 [71 Cal.Rptr.3d 885] [discussing elements of fraud].) Aceves has adequately alleged those facts.
Aceves’s other claims and requests for relief lack merit as a matter of law. All of them are based on alleged irregularities in the foreclosure process. We see no irregularities that would justify relief. For example, Aceves contends U.S. Bank’s designation of Quality Loan Service as the trustee under the deed of trust was defective because the Substitution of Trustee was signed by the bank’s attorney-in-fact. But Aceves cites no pertinent authority *232 for her contention. (See Schoendorf v. U.D. Registry, Inc. (2002) 97 Cal.App.4th 227, 237-238 [118 Cal.Rptr.2d 313] [party forfeits contention absent citation of authority].) Neither Civil Code section 2934a, which governs the substitution of trustees, nor the trust deed itself precludes an attomey-in-fact from signing a substitution of trustee. And case law strongly suggests Aceves is wrong. (See Tran v. Farmers Group, Inc. (2002) 104 Cal.App.4th 1202, 1213 [128 Cal.Rptr.2d 728] [“an attomey-in-fact is an agent owing a fiduciary duty to the principal”]; Burgess v. Security-First Nat. Bank (1941) 44 Cal.App.2d 808, 818-819 [113 P.2d 298] [person can perform any legal act through attomey-in-fact that he or she could perform in person, including entering into contracts].)
Aceves also takes issue with the notice of default, pointing out that it mistakenly identified Option One, the mortgagee, as the beneficiary under the deed of trust when U.S. Bank was actually the beneficiary. Although this contention is factually correct, it is of no legal consequence. Aceves did not suffer any prejudice as a result of the error. Nor could she. The notice instructed Aceves to contact Quality Loan Service, the trustee, not Option One, if she wanted “[t]o find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason.” The notice also included the address and telephone number for Quality Loan Service, not Option One. Absent prejudice, the error does not warrant relief. (See Knapp v. Doherty (2004) 123 Cal.App.4th 76, 93-94 & fn. 9 [20 Cal.Rptr.3d 1].) The error here did not violate any statutory notice provisions. The notice of default was recorded by the properly designated trastee, and the notice did not have to identify the beneficiary. (See Civ. Code, § 2924, subd. (a)(1) [notice of default may be recorded by trustee, mortgagee, or beneficiary]; id., subd. (a)(l)(A)-(D) [setting forth required contents of notice of default].)
Last, after the filing of the reply brief and before oral argument, we requested additional briefing on the protections accorded by chapter 13. In her letter brief, Aceves went beyond the scope of the request and presented arguments not previously made about the order in which various documents were recorded. The new arguments were unsolicited; Aceves did not explain why the arguments were not raised earlier; and U.S. Bank had no opportunity to respond. Accordingly, we do not reach them. (See City of Costa Mesa v. Connell (1999) 74 Cal.App.4th 188, 197 [87 Cal.Rptr.2d 612]; Campos v. Anderson (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)
It follows that the trial court properly sustained the demurrer without leave to amend with respect to all claims and requests for relief other than the claims for promissory estoppel and fraud. Aceves should be allowed to pursue those two claims.
*233 in
DISPOSITION
The order and the judgment are reversed to the extent they dismissed the claims for promissory estoppel and fraud. In all other respects, the order and judgment are affirmed. Appellant is entitled to costs on appeal.
Rothschild, J., and Johnson, J., concurred.
On February 9, 2011, the opinion was modified to read as printed above.