Filed 3/18/16  Mechanic v. Bank of America CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JONAH MECHANIC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants and Respondents. | D067080<br><br><br><br>(Super. Ct. No. 37-2012-00058646-CU-FR-NC ) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Law Offices of Yasmine Djawadian and Yasmine Djawadian for Plaintiff and Appellant.

Akerman, Justin D. Balser and Bryan M. Leifer for Defendants and Respondents.

Jonah Mechanic owns several rental properties in San Diego County.  To purchase one of these properties, Mechanic obtained an adjustable rate loan for almost $1 million.  He fell behind in making his loan payments.  Mechanic sought a loan modification with Bank of America, N.A (Bank of America).  When he did not receive one, he filed suit

against Bank of America and ReconTrust, N.A (ReconTrust). During the pendency of the litigation, Nationstar Mortgage, LLC (Nationstar) became the servicer of Mechanic's loan.

After Bank of America and ReconTrust successfully demurred to the original and first amended complaints, Mechanic filed a second amended complaint, naming Bank of America, Nationstar, and ReconTrust as defendants (Bank of America, Nationstar, and ReconTrust collectively Respondents). Respondents successfully demurred to the second amended complaint, and the superior court did not grant Mechanic leave to amend.

Mechanic appeals the ensuing judgment of dismissal, contending the superior court erred when it did not find that he had stated valid causes of action for fraud, promissory estoppel, or fraudulent transfer.[1] He also claims that he can state a valid claim under California's unfair competition law (UCL; Bus. & Prof. Code,[2] § 17200 et seq.). The crux of all of Mechanic's causes of action is Mechanic's claim that Bank of America promised him a loan modification, if he was not current on his loan payments. Thus, he alleges that only after he received Bank of America's "guarantee" of a loan modification, did he begin to miss his loan payments.

However, judicially noticeable facts as well as exhibits to the operative complaint show that Mechanic had already begun missing his loan payments prior to being told by

---

[1]    The second amended complaint also included a claim for conspiracy. Mechanic does not take issue with the superior court sustaining the demurrer as to this alleged cause of action.

[2]    Statutory references are to the Business and Professions Code unless otherwise specified.

Bank of America that he needed to be in default under his loan before he would be considered for a loan modification. The fact that Mechanic had already missed loan payments undermines his entire case. Accordingly, we conclude that none of Mechanic's arguments have merit and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Standard of Review

We began our discussion of the salient facts with a brief examination of the applicable standard of review. This somewhat unorthodox approach is warranted here where Mechanic has filed three complaints, the key allegation in all of Mechanic's causes of action is contradicted by a document that the superior court judicially noticed, and the allegations in the subsequent complaints call into question the veracity of certain crucial allegations. As such, we take the facts, when appropriate, from the operative complaint, but we point out when the allegations have changed substantially from previous complaints or the allegations are contradicted by judicially noticed facts or exhibits to the complaint.

Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) We assume the facts alleged in the operative complaint are true if they are not contrary to law or to a fact of which we may take judicial notice. (See *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 238.) In addition, we do not assume the truth of contentions,

3

deductions, or conclusions of law.  (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 967.)  And "we give the complaint a reasonable interpretation, reading it in context." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)  It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment.  (*Ibid*.)

Background

Mechanic owns certain real property located at 824-826 Sapphire Street, San Diego, California 92109 (Property).  On July 7, 2006, to purchase the Property, Mechanic obtained a $960,000 loan from Countrywide Home Loans, Inc. (CHL) memorialized by a promissory note.  The note was secured by a deed of trust recorded against the Property. Although the operative complaint referred to the Property as Mechanic's home, in a bankruptcy filing of which the superior court took judicial notice, Mechanic listed the Property as one of five vacation rentals he owned.[3]

The loan was an adjustable rate loan whereby monthly payments would periodically increase, starting on September 1, 2007 and each 12 months thereafter. Mechanic describes the loan as a "negative amortization and minimum payment loan" where he was permitted to begin payments at a 1.5 percent interest rate with a minimum

---

[3]     Mechanic does not take issue or otherwise challenge the superior court's granting of Respondents' request for judicial notice in support of their demurrer to the second amended complaint.  Therefore, we treat all judicially noticed facts/documents as part of the record and consider them in our analysis of the instant appeal.

payment that was less than the sum of the principal and interest payments. When Mechanic first began making payments on the loan, his payment was approximately $2,660.86. By August 1, 2010, Mechanic's monthly loan payment "skyrocketed" to about $3,305.57. These payments would only increase over time.

In March 2009, Mechanic first approached Bank of America about a loan modification. To this end, he retained the law firm, Cutsworth and Associates (Cutsworth), to assist him. Mechanic also sought out a "loan professional" who was a "veteran in the refinance business" about refinancing the loan. Mechanic alleges that, at this time, he was told he was "eligible for a refinance," but chose not to pursue the refinance because he wanted to "explore his loan modification options further before deciding on whether to obtain a refinance."

Fifteen months later, in July 2010, Mechanic alleges he became "wary" of Cutsworth's efforts to modify his loan and he went in person to a Bank of America retail branch "to obtain more specific information about the loan modification procedure." Mechanic alleges he spoke with a Bank of America retail employee named "Michael," who purportedly took his income information and stated Mechanic would be eligible for a loan modification based on the income figures he stated. However, Michael also told Mechanic he would need to miss payments on the loan and provide documentation to verify his income before he could obtain a loan modification.

Mechanic alleges that he told Michael that he would be approved for a refinance, but Michael told him to "go with a loan mod instead" and that "the feds pumped in money to go towards the bank's mod programs" to aid borrowers during the recession.

5

Mechanic claims that Michael told him a loan modification would be better than a refinance, and a loan modification "would be a guarantee" if his income documentation confirmed what Mechanic had told Michael.[4]

Mechanic alleges that in mid-August 2010, an out-of-state buyer and real estate investor approached him because he "wished to purchase [the Property] for a reasonable profit for [Mechanic]." Mechanic avers that he declined the offer because he had already decided "to move forward with a loan modification."

Mechanic alleges that he missed his first loan payment in August or September 2010.[5] He states that he only began missing payments because Michael told him to stop making payments so he could obtain a loan modification. To this end, Mechanic attached his alleged payments on his loan for 2009 as exhibit A and payments for part of 2010 as exhibit B to the operative complaint. However, even in reviewing these exhibits, it is clear that Mechanic missed payments prior to August or September 2010. Further, the payments are for varying amounts. For example, payments made in 2009 begin at

---

[4]    Mechanic's allegation that Michael said a loan modification was a "guarantee" first appeared in the second amended complaint. In the original complaint, Mechanic alleged that he was advised by Bank of America to stop making his loan payments for three months "so he could qualify for a loan modification." There was no allegation that Bank of America guaranteed Mechanic a loan modification. In the first amended complaint, Mechanic alleged that Michael told him that "missing three payments coupled with the appropriate financial circumstances . . . would translate into a loan modification." Only after the court sustained the demurrer to the first amended complaint, but granted Mechanic leave to amend, did Mechanic add the allegation that Michael guaranteed him a loan modification.

[5]    In the original and first amended complaint, Mechanic alleged that he first missed a loan payment in September 2010. In the second amended complaint, Mechanic alleges that he missed his first payment in August 2010.

6

$3,074.95, increase later to $3,305.57, and then decrease to $3,074.95. Payments in 2010 began at $3,485.61, increase to $3,636.13, and then decrease to $3,305.57. Although Mechanic alleges that he obtained an adjustable rate loan, he only claims that his payments would increase over time. He offers no explanation why the amount of his alleged payments in 2009 and 2010 varied, at times increasing or decreasing in amount. Also, he does not explain his missed payments during this time period.

In addition, further contradicting Mechanic's allegations that he was current on his loan until August or September 2010, ReconTrust recorded a notice of default on September 9, 2010, indicating that Mechanic was $17,506.47 in arrears as of September 7, 2010. Thus, the notice of default showed that Mechanic already was several months in arrears at the time he claims he stopped making payments on his loan.[6]

Mechanic alleges he submitted various loan modification applications between November 2010 and July 2012, and he was denied for loan modification for various reasons, including "non-affordability" and lack of investor approval.

In April 2011, over two years after Mechanic was told he was eligible for a loan refinance, Mechanic alleges he attempted to refinance the loan, but he no longer qualified due to being in default under the loan.

---

[6]     The superior court took judicial notice of the notice of default.

While attempting to obtain a loan modification, Mechanic filed for bankruptcy at least once[7] to "protect his investment and save his home" when faced with foreclosure. Mechanic's bankruptcy schedule indicated he owns five vacation rentals, each valued between $615,000 and $1.6 million. In that schedule, Mechanic valued the Property at $1,254,696.

ReconTrust recorded a notice of trustee's sale on January 23, 2012.

On June 26, 2012, Mechanic, proceeding in propria persona, filed a complaint alleging, among other things, Bank of America did not have the authority to foreclosure on the Property (Foreclosure Complaint). In the Foreclosure Complaint, Mechanic did not allege that he was current on his loan or that the notice of default stated an incorrect amount by which he was in arrears.

About July 1, 2013, Nationstar acquired the servicing rights to Mechanic's loan from Bank of America. To date, there has been no foreclosure sale involving the Property.

Mechanic filed his original complaint on November 20, 2012. Bank of America and ReconTrust demurred to the original complaint, and the court sustained the demurrer with leave to amend.

Mechanic subsequently filed a first amended complaint. Bank of America and ReconTrust demurred to the first amended complaint. Prior to the court hearing on the

---

7    Respondents claim Mechanic filed for bankruptcy twice. However, based on the allegations in the operative complaint as well as the judicially noticed documents, we only find an indication of one bankruptcy filing in the record.

8

demurrer, Mechanic amended the first amended complaint to identify Nationstar as a Doe defendant. Also before the court heard the demurrer, Mechanic moved for a preliminary injunction. Neither Bank of America nor ReconTrust opposed the motion, and the court granted it on June 14, 2013. However, the court subsequently sustained Bank of America and ReconTrust's demurrer to the first amended complaint with leave to amend.

Mechanic then filed the second amended complaint on September 20, 2013. The operative complaint contained four causes of action: (1) fraud and deceit; (2) promissory estoppel; (3) fraudulent transfer; and (4) conspiracy. Respondents demurred to the second amended complaint, which included a request for judicial notice. Mechanic opposed the demurrer, and Respondents filed a reply.

After considering the pleadings and hearing oral argument, the superior court sustained the demurrer without leave to amend. In doing so, the court granted Respondents' request for judicial notice. The superior court entered an order and judgment of dismissal of the second amended complaint. Mechanic timely appealed.

DISCUSSION

I

*MECHANIC'S CONTENTIONS*

Mechanic claims that the court sustaining the demurrer to the operative compliant without leave to amend is inconsistent with the court's grant of a preliminary injunction. Mechanic also argues that he has pled valid causes of action for fraud, promissory estoppel, and fraudulent transfer. In the alternative, Mechanic insists the superior court erred by not allowing him a fourth opportunity to plead a valid cause of action. Finally,

9

although he never alleged such a claim below, Mechanic now asserts he can state a valid claim under the UCL. We reject Mechanic's contentions.

## A. ReconTrust

Before we address the merits of Mechanic's contentions, we observe that although Mechanic has named ReconTrust as a defendant in the operative complaint, he never alleges any wrongdoing on behalf of ReconTrust. Respondents point out the lack of any specific allegations as to ReconTrust, but Mechanic does not deal with this issue whatsoever. We interpret Mechanic's silence on this point as a tacit admission that he cannot allege any valid cause of action against ReconTrust. On this ground alone, we affirm the judgment of dismissal as to ReconTrust.

## B. The Preliminary Injunction

Mechanic first argues that because the court granted his motion for a preliminary injunction determining that he has a "reasonable chance of success on the merits, it follows that he must have alleged sufficient facts to form a cause of action in his [first amended complaint] and [second amended complaint]." He therefore concludes that the superior court's dismissal of his "entire case" after demurrer "constituted a legal error." We disagree.

As a threshold matter, we note that Mechanic has provided no authority that holds it is legal error for a court to grant a preliminary injunction and then subsequently sustain a demurrer to the operative complaint without leave to amend. His failure to do so waives his argument. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If

10

none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention deemed waived because "Appellant did not formulate a coherent legal argument nor did [he] cite any supporting authority."]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["The dearth of true legal analysis in [his] appellate briefs amounts to a waiver of the [contention] and we treat it as such."].)

In addition, a cursory review of the record indicates that the court's subsequent sustaining of the demurrer does not contradict its previous grant of Mechanic's motion for a preliminary injunction. Mechanic's motion for a preliminary injunction was unopposed. Indeed, the superior court deemed "the lack of opposition a concession on the merits of Plaintiff's position." The court also ruled on the motion before considering the pending demurrer to the first amended complaint. Moreover, the granting of the unopposed motion for a preliminary injunction underscored the court's cautious and careful approach to the litigation. The preliminary injunction only prohibited the nonjudicial foreclosure regarding the Property. We find it prudent that the court would maintain the status quo until it considered the arguments set forth in the demurrer. Here, the court sustained the demurrer to the first amended complaint, but allowed Mechanic leave to amend. Mechanic filed a second amended complaint to which Respondents successfully demurred. At that point, after considering the pleadings and hearing oral argument, the court concluded none of Mechanic's claims had merit. The court thus sustained the demurrer and ultimately dismissed the entire action. There is nothing contradictory in the court's actions below.

11

## C. Fraud

Mechanic next asserts that he has stated a valid fraud cause of action against Respondents. We disagree.

The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "Each element in a cause of action for fraud . . . must be factually and specifically alleged." (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)

Here, Mechanic alleges that a Bank of America employee named Michael represented to him that if he stopped making loan payments and submitted the necessary financial information that conformed to the income information Mechanic had provided Michael verbally, he would receive a loan modification. Mechanic alleges that these misrepresentations were material because he had not missed any loan payments prior to being told by Michael to stop paying his mortgage. He avers that he stopped making payments based on Michael's "guarantee" of a loan modification. Further, he claims his "justified" reliance caused him damages because "[Respondents] initiated foreclosure proceedings . . . . [Mechanic] also lost the opportunity to seek a refinance . . . because he is now far behind on his mortgage and his credit has been affected adversely . . . ." Additionally, Mechanic claims he lost the opportunity to sell his home in August 2010 "because at that time, he did not have the amount of arrears he has now which has diminished the value of" the Property.

12

The crux of Mechanic's fraud claim is that he only missed his loan payments after Michael told him he needed to miss three payments to be considered for a loan modification. Mechanic alleges that he met with Michael in July 2010 and ceased making his loan payments in August or September 2010. However, this allegation is directly contradicted by the notice of default recorded September 9, 2010 indicating that as of September 7, 2010, Mechanic was already $17,506.47 in arrears on his loan.

Clearly, the notice of default shows that Mechanic had missed several months of payments prior to his claim that the first payment he missed was in August or September 2010. In his opening brief, Mechanic ignores the notice of default. In his reply brief, Mechanic claims the payment receipts attached to the second amended complaint show proof of payment to Bank of America and thus contradict the notice of default. We are not persuaded.

The payments attached to the second amended complaint do not prove that Mechanic was not in arrears. The payments vary in amount from $3,074.95 to $3,305.57 back to $3,074.95 in 2009. In 2010, the first payment appears to be for $3,485.61, the next payment was for $3,636.13, and the rest of the payments were for $3,305.57. Although Mechanic alleges that his loan had a variable rate, he does not explain why he paid more in some months, but less in subsequent months. Further, based only on the payments attached to the second amended complaint, it appears that Mechanic missed at least two payments, both prior to August 2010. " 'Facts appearing in exhibits attached to the . . . complaint also are accepted as true and are given precedence, to the extent they contradict the allegations.' " (*Nolte v. Cedars–Sinai Medical Center* (2015) 236

13

Cal.App.4th 1401, 1406.) Here, the payments attached to the operative complaint contradict the allegations that Mechanic was current with his payments on the loan and only began missing payments in August or September 2010.

We also find it significant that Mechanic never directly argues the notice of default was incorrect although having ample opportunity to do so. For example, in the Foreclosure Complaint, Mechanic acknowledged that the notice of default had been recorded, but asserted that it was void based on numerous technical, statutory violations. Mechanic, however, never alleged that the notice of default was improper because it showed the incorrect amount in arrears or that he was current in his payments. We view Mechanic's silence on this point as significant, especially in a case in which he is attacking the authority of a party to conduct a nonjudicial foreclosure involving the Property.[8]

We determine that both the notice of default and the Foreclosure Complaint also contradict Mechanic's allegation that he began missing payments on his loan in August or September 2010. We therefore disregard Mechanic's allegations that he was current on his loan at the time he talked to Michael in July 2010 and the first payment he missed was in August or September 2010. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052 ["A demurrer may be sustained where judicially noticeable

---

[8] Bank of America removed the Foreclosure Complaint to federal court and brought a motion to dismiss. Mechanic voluntarily dismissed his complaint before the court heard Bank of America's motion to dismiss.

facts render the pleading defective [citation], and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed."].)

Because Mechanic's allegation that he relied on Michael's misrepresentations to stop paying his loan is the foundation of his fraud claim, that claim necessarily crumbles when it is clear that Mechanic had missed payments and was not current on his loan when he talked to Michael. In other words, Mechanic cannot show that he relied on Michael's representation in deciding to stop making his loan payments. The notice of default shows that, as of September 2010, Mechanic was several months in arrears. In addition, the payments attached as exhibits to the operative complaint show that he already had missed payments prior to meeting with Michael.

Further, it is clear that Mechanic cannot allege that he justifiably relied on any representation made by Michael. A plaintiff shows justifiable reliance where he actually relies on the representation and where " ' "circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without independent inquiry or investigation." ' " (*West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794; italics omitted.) Here, Mechanic alleges that a law firm he hired was working on obtaining a loan modification from Bank of America for 16 months prior to his meeting with Michael in July 2010. When Mechanic became "somewhat wary" of the law firm's efforts, he simply walked into a Bank of America office, met with Michael who told him he need only stop making his loan payments and provide income verification, and he was guaranteed to receive a loan modification. We conclude Mechanic was not justified in relying on any such representation for two primary reasons. First, he already had missed

15

loan payments and was in arrears on his loan. Second, the law firm he had hired to negotiate a loan modification had been working on the issue for about 16 months with no success. Thus, we determine that, at the very least, Mechanic should have engaged in some independent inquiry or investigation to see if what Michael said was true. (*Ibid*.) This is especially important here when the mortgage loan at issue concerned one of several rental properties Mechanic owned.

In addition, the fact that Mechanic has already missed payments and did not decide in the first instance to miss payments only after talking to Michael undermines Mechanic's claim for damages for fraud. Here, he maintains that he was damaged by Bank of America's fraud because as a result of him not paying on his loan (1) Bank of America initiated foreclosure proceedings; (2) he was unable to refinance[9] his loan; (3) he could not sell his home for as large of a profit as he could have in August 2010; and (4) his credit rating decreased. However, these "damages" are all attributable to Mechanic being in arrears on his loan, which he was prior to talking to Michael in July 2010. Indeed, Bank of America began the nonjudicial foreclosure process near in time to when Mechanic claims that he missed his first payment. And, there is about a 16-month gap between when Mechanic claims that he was told he would be approved for a refinance and he first talked to Michael. Mechanic undoubtedly cannot claim to have

---

[9]    We note that Mechanic never alleged that he had a viable refinance offer. Instead, he merely alleges that he was told by a "veteran in the refinance business" that "he would certainly be approved for a refinance" in March 2009. He only sought an actual refinance in April 2011, some eight months after he first spoke with Michael, and over two years after he claims he could have been approved for a refinance.

16

relied on any representation from Bank of America or Michael causing him to refrain from seeking a refinance during this 16-month period. Lastly, Mechanic still owns the Property and thus can still sell it so he has not suffered any damages in regard to a potential sale of the Property. Therefore, Mechanic's fraud claim also fails because he has not alleged damages.[10]

In summary, the superior court did not err in sustaining the demurrer without leave to amend as to Mechanic's fraud claim.

### D. Promissory Estoppel

Mechanic also argues that the superior court erred in sustaining the demurrer as to his cause of action for promissory estoppel. Like the fraud claim, Mechanic bases this claim that he was entitled to a loan modification because Michael made an enforceable promise Bank of America would give him a loan modification if he missed his loan payments and submitted an application with income information identical to what he provided to Michael in person. We are not persuaded.

"The doctrine of promissory estoppel 'make[s] a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.' " (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1040-1041 (*Garcia* ).) " ' "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the

---

10    Mechanic still owns the Property. He still may refinance his loan or sell the Property.

party asserting the estoppel must be injured by his reliance.' " ' " (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225.)

Mechanic relies on *Garcia*, *supra*, 183 Cal.App.4th 1031 to argue that the trial court erred in sustaining the demurrer to his promissory estoppel cause of action. In *Garcia*, the plaintiffs contacted their lender to ask for a postponement of a foreclosure sale while they obtained funds to cure their default by refinancing other property they owned. The lender agreed to postpone the foreclosure. Before the deadline, the plaintiffs asked the lender for another extension in the event the new loan on their other property did not close in time. The lender's representative reassured them that the foreclosure would not occur without his approval and agreed to extend the deadline if they needed more time. The new loan took longer than expected so the plaintiffs left messages for the representative to let him know. The foreclosure took place on the original date, unbeknownst to the plaintiffs, who went ahead with the refinancing of their other property. When they contacted the representative, he stated that there had been a mistake and the foreclosure should not have occurred.

On appeal, the Court of Appeal reversed the trial court's summary adjudication of the plaintiffs' promissory estoppel claim. (*Garcia*, *supra*, 183 Cal.App.4th at p. 1046.) Although "[a]s a general rule, a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly mortgage payments is unenforceable," (*id.* at p. 1039), the court held that the plaintiffs' "actions in procuring a high cost, high interest loan by using other property they owned as security were sufficient to support detrimental reliance" for their promissory estoppel claim. (*Id.* at p. 1041.)

18

*Garcia*, *supra*, 183 Cal.App.4th 103 does not help Mechanic. The plaintiffs in *Garcia* took actions to their detriment in reliance on the lender's promise. They procured a high cost, high interest loan using their other property as security in exchange for a promise not to foreclose. In addition, the plaintiffs in *Garcia* showed that they were injured by their reliance in that they lost their home after a foreclosure. Here, no analogous facts exist.

Like his fraud claim, Mechanic argues he relied on Bank of America's alleged promise to modify his loan by ceasing payments on his loan and by foregoing the opportunity to refinance or sell the Property. However, as discussed above, these actions do not constitute reliance on the alleged promise as a matter of law.

The judicially noticed facts as well as the exhibits to the operative complaint show that Mechanic had already missed some loan payments and was in default at the time Michael allegedly guaranteed him a loan modification. Alternatively stated, Michael's promise of a loan modification did not cause Mechanic to miss his mortgage loan payments because he had already started to miss payments prior to June 2010.

In addition, Mechanic has not alleged damages. He claims that he now faces foreclosure and cannot obtain a refinance or sell the Property because of Bank of America's promise to give him a loan modification if he missed his loan payments. These consequences stem from Mechanic's default on his loan. And he defaulted prior to any representation by Michael about a loan modification.

The superior court did not err in sustaining the demurrer to the promissory estoppel cause of action.

19

## E. Fraudulent Transfer

Mechanic's fraudulent transfer cause of action first appeared in the second amended complaint. By way of this cause of action, Mechanic seeks to hold Nationstar liable for Bank of America's failure to offer him a loan modification. At the outset, Respondents maintain Mechanic was not permitted to bring this cause of action absent permission of the superior court because the claim was not within the scope of the order granting leave to amend. (See *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1019, 1023 (*Harris*).)

"Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order." (*Harris*, *supra*, 185 Cal.App.4th at p. 1023.) Under these circumstances, "such granting of leave to amend must be construed as permission to the pleader to amend the cause of action which he pleaded in the pleading to which the demurrer has been sustained." (*People ex rel. Dept. of Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785.) A "plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris*, *supra*, at p. 1023.) An amended complaint that exceeds the scope of an order granting leave to amend may be stricken by a trial court in its own discretion or upon a motion to strike by the opposing party. (Code Civ. Proc., §§ 435, 436.)

On September 5, 2013, the trial court sustained Bank of America and ReconTrust's demurrer to the first amended complaint. Specifically, the trial court sustained the

demurrer to Mechanic's "entire" first amended complaint and the "first, second, third and fourth causes of action" with 15 days leave to amend. The first amended complaint contained four claims: (1) fraud and deceit; (2) promissory estoppel; (3) breach of "implied in fact contract"; and (4) breach of the implied covenant of good faith and fair dealing.

When Mechanic filed his second amended complaint 15 days later, he removed his claims for breach of implied in fact contract and breach of the implied covenant of good faith and fair dealing, and brought new claims for fraudulent transfer and conspiracy. Mechanic did not seek leave to amend to add his claim for fraudulent transfer. Given that Mechanic was not permitted leave to plead a new claim for fraudulent transfer and that he did not seek leave to amend his second amended complaint to add a such a claim, Respondents argue this claim was brought in violation of the California Code of Civil Procedure, and we should affirm the dismissal as to Mechanic's fraudulent transfer claim on this ground alone.

Mechanic utterly ignores this argument and provides no explanation why he did not seek leave from the superior court to expand the scope of the allegations for his second amended complaint. We interpret Mechanic's silence on this issue as his tacit agreement to the merit of Respondents' contention.

Moreover, even if we were to analyze the merits of Mechanic's fraudulent transfer claim, we would conclude Mechanic did not state a valid cause of action.

"A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its

21

claim." (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13.) The purpose of the fraudulent transfer statute is " 'to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach[.]' " (*Chichester v. Mason* (1941) 43 Cal.App.2d 577, 584.)

Here, Mechanic's fraudulent transfer claim hinges entirely on Bank of America's transfer of the servicing of Mechanic's loan to Nationstar. To this end, he alleges that Bank of America transferred the servicing of Mechanic's loan "to evade prospective liability on the obligation owed to [Mechanic], namely a loan modification." Put differently, Mechanic is suing Nationstar for Bank of America's alleged wrongdoings because Bank of America can no longer provide him with a loan modification. However, Mechanic provides us with no authority where the mere transferring of the servicing of a loan allegedly being considered for modification gives rise to a fraudulent transfer claim.

Where one corporation purchases or acquires by transfer the assets of another corporation, California has a general rule of "successor nonliability." (*Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1188.) Exceptions to this general rule exist where "(1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the seller; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28 (*Ray*).)

Mechanic argues that he had sufficiently pled that the transfer of the servicing of his loan "occurred 'for the fraudulent purpose of escaping liability for the predecessor's

22

debts.' "  (See *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1120.)  We disagree.  As a threshold matter, we note Mechanic has not shown Bank of America is liable to him under any of his pled cause of actions, and therefore, he could not maintain a fraudulent transfer claim against Nationstar.

Further, Mechanic merely alleges the legal conclusion that the transfer was fraudulent.  He does not allege that Bank of America, by way of transferring the servicing of his loan, would not be able to pay any damages awarded to him.  In other words, to the extent Mechanic could state a valid cause of action for fraud or promissory estoppel against Bank of America, there is no allegation (nor could there be) that Bank of America could not satisfy any money judgment by Mechanic against it.  Instead, Mechanic points out that Bank of America cannot now modify his loan because it no longer services the loan.  However, Mechanic has not shown that he is entitled to a loan modification.

Mechanic next argues that he has pled or can plead facts that show Nationstar is a mere continuation of Bank of America with regard to servicing his loan.   A successor is found to be a "mere continuation" of its predecessor only where a plaintiff alleges sufficient facts to show either (1) no adequate consideration was given for the predecessor's assets and/or (2) one or more persons are officers, directors, or stockholders of both corporations.  (*Ray*, *supra*, 19 Cal.3d at p. 29.)  "The significant principal is that ' "if a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old." ' "  (*Cleveland v. Johnson*

23

(2012) 209 Cal.App.4th 1315, 1334, quoting *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753.)

Mechanic does not allege Bank of America and Nationstar inhabit the same offices or personnel, or that even any of the two companies' shareholders are the same. Instead, he baldly concludes Nationstar "did not furnish Bank of America with adequate consideration to satisfy [its] liabilities and claims to its creditors." Mechanic expands on this in his opening brief by alleging "new facts" showing insufficient consideration because "the claims of individuals who were owed a proper loan modification review such as Plaintiff, were not met." Essentially, Mechanic argues the consideration exchanged was inadequate because he cannot receive a loan modification from Bank of America.

Such allegations do not establish nonexistent or inadequate consideration. Mechanic makes no attempt to explain why, when transferring servicing rights to a loan, a successor servicer should have to provide Bank of America with the sort of consideration that would enable it to still provide a former borrower with a loan modification. Further, Mechanic does not identify what consideration was given, nor does he provide any analysis as to why such consideration might have been inadequate in light of consideration given to other servicers. For these reasons, Mechanic has not alleged facts sufficient to show Nationstar was a "mere continuation" of Bank of America.

Lastly, Mechanic contends he can plead that Nationstar is liable for Bank of America's acts because it assumed Bank of America's liabilities. A successor will be

24

liable for the predecessor's obligations if there was an express or implied agreement assuming liability. (*Ray*, *supra*, 19 Cal.3d at p. 28.) In his opening brief, Mechanic states he can plead the following additional facts: "(1) Upon information and belief, the service transfer from Bank of America to Nationstar was pursuant to an agreement whereby Nationstar assumed Bank of America's debts as well as assets[; and] (2) [Mechanic's] loan is not an asset, but a liability as [Mechanic's] loan [was] in default when the transfer occurred." These are not factual allegations, but mere conclusions consisting of little more than the bald assertion that Nationstar assumed Bank of America's debts. Such allegations are not sufficient. To allege successor-in-interest liability on the basis that the successor expressly or impliedly agrees to assume the liabilities of its predecessors, a plaintiff " 'must not only plead the existence of an assumption of liability but either the terms of that assumption of liability (if express) or the factual circumstances giving rise to an assumption of liability (if implied).' " (*No Cost Conference, Inc. v. Windstream Communications, Inc.* (S.D.Cal. 2013) 940 F.Supp.2d 1285, 1300.) Here, Mechanic has pled no facts describing the terms of the assumption of liability or the factual circumstances giving rise to the assumption of liability. Moreover, as Respondents point out, federal courts have routinely found that servicing transfers do not amount to the transfer of both assets and liabilities. (See, e.g., *Pacini v. Nationstar Mortgage LLC* (N.D.Cal., June 13, 2013, No. C12-04606 SI) 2013 U.S. Dist. LEXIS 84215, at pp. *11-13 [finding no assumption of liabilities following a servicing transfer from Aurora Bank FSB to Nationstar]; *Brockway v. JP Morgan Chase Bank* (S.D.Cal., Oct. 15, 2012, No. 11-cv-2982 JM (BGS)) 2012 U.S. Dist. LEXIS

25

148129 at pp. *6-7 [finding no assumption of liability following a servicing transfer between Wells Fargo and JP Morgan]; *Owens v. Bank of America, N.A.* (N.D.Cal. Oct. 25, 2012, No. 11-cv-4580-YGR) 2012 U.S. Dist. LEXIS 154435, at p. *16 ["Plaintiffs argue that it can be 'reasonably assumed that' there are agreements between BANA and JPM about rights and obligations with respect to the transferred loan, and that they should be given a chance to learn the terms of those agreements, including whether they support successor liability, in discovery.  Plaintiffs misunderstand their pleading obligations."].)

Simply put, Mechanic has not alleged specific facts and has not indicated that he can allege specific facts to show Bank of America's transfer of the servicing of his loan to Nationstar constituted a fraudulent transfer.

### F.  UCL Claim

Mechanic argues for the first time on appeal that even if each of his other claims fail, he can still state a claim for violation of the UCL.  Respondents maintain that we should not permit Mechanic to raise this claim for the first time on appeal.  Mechanic counters that his UCL claim is merely a new legal theory based on the same factual dispute set forth in the second amended complaint.  (See *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 464.)  While we are troubled by Mechanic's lack of any explanation why he did not allege a UCL cause of action in any of the three previous complaints, we agree that the basis of his UCL claim is the same as for his claims for fraud and promissory estoppel.  Therefore, we will address the merits of Mechanic's UCL claim.

26

The UCL was enacted to protect consumers and competitors from unlawful, unfair, or fraudulent business acts or practices. The UCL accomplished this goal by promoting fair competition in commercial markets for goods and services. (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

"The UCL defines 'unfair competition' as any 'unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . .' [Citation.] It borrows standards of conduct from other statutes, and a plaintiff need only show the violation of any law. [Citation.] Another statute specifically makes unlawful advertising services by 'untrue or misleading' statements." (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 98.)

"An 'unlawful' business activity [under the UCL] includes ' "anything that can properly be called a business practice and that at the same time is forbidden by law." [Citation.]' [Citation.] Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 717-718; italics omitted.)

Here, Mechanic contends he has standing to bring a claim under the UCL because he "suffered damages as a result of Respondents' misrepresentations, namely through his deteriorated credit, having a bankruptcy on his record, and facing foreclosure. . . . [Mechanic] can also additionally plead that he has incurred late fees and penalties as a direct result of the representation that he would have to fall behind on his mortgage to qualify for a loan modification." Mechanic further argues he could allege that Bank of

27

America's representations were "unfair and fraudulent in that they misled [Mechanic] into missing his mortgage payments falling behind, telling him that he would qualify when [it] knew that ultimately he would not, and then denying him a loan modification." He also claims the transfer of the servicing of his loan constituted a UCL violation.

In his reply brief, Mechanic reiterated that he properly pled damages under the UCL, repeating that he was damaged in "various ways," including "incurring late fees and penalties." Damages are not available under the UCL (see *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144), but it appears Mechanic is using the word "damages" to describe his injury. Nevertheless, Mechanic has not alleged that he has standing to bring suit under the UCL.

Section 17204 restricts standing to bring a UCL claim to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) Our Supreme Court has explained that there are "innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323.) "It suffices to say that . . . a private plaintiff filing suit . . . must establish that he or she has personally suffered [economic] harm." (*Ibid*.)

Here, Mechanic has not alleged that he lost money based on any unfair act by Respondents. He has not made any payments under the loan since Bank of America's allegedly unfair acts. He still owns the Property. Simply put, Mechanic has not alleged any loss of money or property resulting from Respondents' actions.

In addition, Mechanic's UCL claim is premised on his allegations that he only stopped making payments after Michael told him he needed to be in default under his loan to receive a loan modification. As we discuss above, judicially noticeable facts as well as exhibits to the second amended complaint show otherwise. Accordingly, even assuming Mechanic has standing to bring a UCL claim, he could not allege that he relied to his detriment on any unfair act or practice.

For these reasons, we conclude Mechanic cannot state a claim under the UCL.

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.


29