Filed 4/17/25  Henry v. Aleksic CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| KIMBERLY HENRY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SAM ALEKSIC, as Trustee, etc., et al.,<br><br>Defendants and Respondents. | E081697<br><br>(Super.Ct.No. RIC1906267)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The petition for rehearing is denied.

On our own motion, the Court ORDERS the opinion filed on April 2, 2025 modified as follows:

On the last page of the opinion, page 18, in the first sentence of the last paragraph above the disposition, replace the word "or" in the phrase "undue influence or lack of capacity" with a comma, and add the phrase ", or unauthorized practice of law" to the end of that sentence, so that it reads:  Finally, we reject Kimberly's attempt to argue that the 2018 trust amendment was the product of undue influence, lack of capacity, or unauthorized practice of law.

1

The modification does not change the judgment.

                                 MENETREZ

                                          J.

We concur:


MILLER
           Acting P. J.


FIELDS
           J.

Filed 4/2/25  Henry v. Aleksic CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KIMBERLY HENRY, | |
| Plaintiff and Appellant, | E081697 |
| v. | (Super.Ct.No. RIC1906267) |
| SAM ALEKSIC, as Trustee, etc., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Carol A. Green, Judge.  Affirmed.

Johnson & Shinton and Thomas E. Shinton for Plaintiff and Appellant.

Stream Kim Hicks Wrage & Alfaro, Eugene Kim, and Elizabeth V. Duran for Defendants and Respondents.

Kimberly Henry filed this lawsuit against her father, Jerry Henry, after learning that he amended the terms of his trust to disinherit her and make his grandson (her son)

1

the sole beneficiary of his estate.[1]  Kimberly asserted a claim for promissory estoppel, alleging that Jerry breached an oral promise to leave everything to her if she would take care of him and his wife, Denise Henry (Kimberly's mother), after Denise's cancer diagnosis.  Shortly after filing a demurrer in this action, Jerry passed away and Kimberly amended her complaint to name his estate, his trustee, and her son as defendants.  Following trial, at which Kimberly and other members of the Henry family testified, the trial court entered judgment in favor of defendants, concluding that Kimberly was not a credible witness and failed to prove the existence of the alleged oral promise.  Kimberly appeals from the judgment, and we affirm.

## BACKGROUND

I.    *Jerry's trust and Kimberly's lawsuit*

Jerry and Denise were married for 40 years and had three children together—Kimberly, Stacy, and Brian.  In 1999, Jerry created a revocable living trust, which named Kimberly and Stacy as beneficiaries and expressly excluded Brian.[2]  Jerry amended his trust in 2001 and 2007 to change the successor trustee.

In the summer of 2010, Stacy and Denise had an argument, and Stacy moved out of her parents' home.  Stacy saw her parents briefly in November 2010 but remained estranged from them for the rest of their lives.

---

[1]    Because some of the parties in this case have the same last name, we refer to them by their first names to avoid confusion.  No disrespect is intended.

[2]    Denise created a trust the same year, but her trust is not at issue in this case.

2

On December 1, 2010, Jerry executed a "short form" amendment to his trust. The short form lists Kimberly as the successor trustee but does not identify the beneficiaries of the trust. The corresponding "long form" amendment to Jerry's trust made Kimberly the sole beneficiary and expressly excluded Stacy. However, it is unknown whether Jerry ever executed that document, because the parties could not locate a signed copy of it. Rodwin Wong, an attorney based in Hawaii (where Jerry and Denise owned property) drafted the long form and short form amendments, as well as the preceding trust documents.

In late 2010, Denise was diagnosed with cancer. Kimberly and her son, Dylan Heredia-Tamayo, were living with Jerry and Denise at the time, and Kimberly began providing Denise's in-home care. In 2015, Jerry retired and began to share equally in Denise's care. In June 2015, Kimberly met Craig Wilhite, and in August 2017, Craig and his two sons moved into Jerry and Denise's home.

In February 2018, Jerry asked his tax preparer, Sam Aleksic, to draft an amendment to his trust. The amended trust, which was executed on February 16, 2018, names Dylan the sole beneficiary, appoints Aleksic the trustee, and states that Jerry "has intentionally left nothing to" Kimberly, Stacy, Brian, Craig, and Craig's sons.

In June 2018, Kimberly and Craig were married in Las Vegas. In July 2018, Jerry and Denise served Kimberly and Craig with an eviction notice, and Denise filed requests for domestic violence restraining orders against Kimberly and Craig. In her declaration supporting her requests, Denise stated that Kimberly and Craig verbally and emotionally abused her and Jerry "on a daily basis" and that she and Jerry felt like "prisoners in

3

[their] own home" because of the "constant yelling and bantering about our financial status and how they believe it belongs to them." Denise said that she was in "constant[]" fear of Kimberly and Craig and had called the police on them twice already.

Before the hearing on Denise's requests, Craig agreed to sign a stay-away order. At the hearing, Denise testified: "The whole thing about my daughter and her husband is money. They think they are entitled to my entire estate. They don't know who it is for, but they think they know. And that's when it started getting really bad is when they thought the trust was going elsewhere. And that no matter what I did, it was not right. . . . [And] I took away my daughter's inheritance. You don't treat people like they're garbage and expect money. And that's the entire problem with my daughter. It's money." At the close of evidence, the court denied the request on the ground that Denise "failed to prove by a preponderance of the evidence a history of domestic violence sufficient for . . . a permanent restraining order."

On April 29, 2019, Denise passed away. In September 2019, Kimberly filed a petition to appoint a conservator for Jerry. The court-appointed psychologist who evaluated Jerry to assess his mental capacity concluded that Jerry did not need a conservator. During an interview with the probate investigator, Jerry stated that he had "written [Kimberly] out of his trust" and that she "wants her fair share of the pie, which she is not getting."

A few months later, in December 2019, Kimberly filed this lawsuit, asserting claims against her father for promissory estoppel, unjust enrichment, quantum meruit, breach of quasi-contract, and intentional or negligent infliction of emotional distress. In

4

her verified complaint, Kimberly alleged that "[s]ince approximately December of 2001, [Jerry] and his late wife promised [her] that if she provided for them, ensured they had their medicine, took [Jerry's] wife to the doctors, cooked for them, cleaned for them, paid their bills, and was there for their every beckon-call [*sic*], that [she] would receive everything from their Will, their property, all assets, homes, etc." Kimberly alleged that Jerry breached that promise by amending his trust to make Dylan the sole beneficiary.

In March 2020, the probate court dismissed Kimberly's conservatorship petition.

On May 7, 2020, while his demurrer to Kimberly's complaint in this case was pending, Jerry passed away. Following his death, Kimberly filed a verified first amended complaint against Jerry's estate and Dylan, asserting the same claims as in her original complaint. In November 2021, Kimberly filed a verified second amended complaint that added Aleksic as a defendant, eliminated the infliction of emotional distress claim, and added claims for fraud and malicious prosecution. Because this appeal challenges only the court's ruling on the promissory estoppel claim, we limit our discussion of the trial evidence to that claim.

II. *Trial evidence*

A. *Kimberly's testimony*

At trial, Kimberly testified that in December 2010, after Denise was diagnosed with cancer, Jerry promised his estate to Kimberly if she would take care of him and Denise. Kimberly said that she agreed to the arrangement and that Jerry memorialized the promise by amending his trust in 2010 to make her the sole beneficiary. Although a

signed version of the 2010 amendment could not be found, Kimberly testified that she saw her father sign the document at a UPS store on December 1, 2010.

Kimberly said that she was forced to put her life on hold and give up pursuing work outside the home in order to take care of Denise while Jerry was working full time. She testified: "I was told if I took care of them, they would take care of me, and everything would be mine. And then with the 2010 document, that reassured me and made me feel comfortable that, you know, okay. I'm just going to take care of my mom and not worry about me, you know, because they promised to take care of me in the end." Kimberly had worked a few jobs in the past but had never been steadily employed. However, Kimberly claimed that she gave up her goal of "pursuing a job in preschool" to care for Denise, because right after her mother was diagnosed with cancer and right before she agreed to Jerry's proposal, she had "just received my certified assistant preschool teacher's aid certification."

To prove that she provided fulltime care to Denise, Kimberly introduced several videos that she had recorded with her phone. The videos depict Kimberly arguing with Denise, who is emaciated—Kimberly testified that Denise then weighed approximately 68 pounds—and visibly distressed, often to the point of wailing. In one of the videos, Kimberly follows Denise as she walks through the house looking for her pants, and Kimberly says to the camera, "Ladies and gentlemen, this is the reason she ends up back in the hospital two days later after she's home, just so we can all be clear on this, because the insurance is questioning it now mom and they're saying that dad, that you don't have any more benefits, so dad has to start paying cash for your stays. . . . [¶] . . . You guys

6

have chances of getting your homes all taken away, 'cause you don't have insurance to pay for your stays." Denise pleads with Kimberly to leave her alone and tells her, "You are getting me extremely upset. . . . You yell at me. You scream at me."

In another video, Jerry is arguing with Denise because Denise does not want Kimberly to give her medicine, and Jerry says, "Stacy left. You got sick. . . . Stacy's outta the picture . . . but at least Kimberly's here trying to help you, help me but that's not good enough for you." In yet another video, Craig and Kimberly are arguing with Jerry and Denise, and Craig tells Denise, "[W]hen we leave, you might as well kill yourself, because you will die. . . . Sitting in a hot, miserable room that's filthy. And yesterday that was full of black piss . . . it was that bad. We got pictures of it."

On cross-examination, defense counsel asked Kimberly why she testified that Jerry made the promise to her in 2010 when her verified complaint alleged that he made the promise in 2001. Kimberly responded that 2001 was "when I was told that my sister and I would inherit my parents' belongings." Kimberly explained that Jerry's estate was "supposed to go to [Stacy] as well," but "[Stacy] left and I stayed, so that's when it got changed because she left." Kimberly claimed that her parents disinherited Stacy because Stacy refused to believe that Denise had been diagnosed with cancer.

Defense counsel also asked Kimberly about a trustee's deed to a property that Jerry and Denise owned in Hawaii. Shown the deed, Kimberly acknowledged that it was recorded on June 22, 2021, and that it purported to transfer title to the property to "Kimberly Michelle Wilhite" on December 1, 2010. Kimberly said that Wong, her parents' probate attorney, had prepared the deed during their trip to Hawaii in late 2010,

7

that her parents gave her a copy of the deed when they returned from the trip sometime in late 2010 or early 2011, and that she had kept it under her mattress since then. Asked why her last name was listed as "Wilhite" in a document that predated her meeting Craig by several years, Kimberly replied, "That's a little weird," and then claimed to have trouble remembering when she received the deed or which attorney had prepared it. At one point, Kimberly "wonder[ed]" out loud whether Wong "rewrote" the deed for her after Jerry died, and the trial court told her, "Please don't speculate."

Regarding her work history, Kimberly acknowledged that from 2009 to the present she was not employed, with the exception of a brief stint working as a chef at a casino from sometime in 2019 to February 2020.

B.    *Wong's testimony*

Wong testified that he drafted the original version of Jerry's trust in 1999 and also drafted all of the amendments to the trust except for the final amendment in 2018. His typical practice was to create the trust agreement (also referred to as the "long form" agreement), as well as a "short form" agreement, which contains a brief summary of the trust and is designed to "notify people that a trust exists." Regarding the trust documents he drafted for Jerry in 2010, Wong said that "[t]he one thing [Jerry and Denise] wanted to do is make sure that Kimberly was the one that was going to take over after they died." Agreeing that an unsigned trust document is not effective, Wong said that he remembered that Jerry had signed the short form amendment—which listed Kimberly as the trustee— but he could not recall whether Jerry signed the long form amendment. Asked about the

8

2010 trustee's deed that Kimberly claimed he had drafted, Wong said that he did not recognize the document.

### C. *Stacy's testimony*

Stacy testified that her falling out with her parents had to do with their feelings about her fiancé and had nothing to do with Denise's cancer diagnosis. She stopped seeing her parents before the diagnosis, and she did not learn that Denise had cancer until after she died. Her parents never told her that they were going to disinherit her, but she assumed that they would because of the estrangement.

### D. *Dylan's testimony*

Dylan testified that he was very close to his grandfather, because his biological father had left when he was young and Jerry had been like a "father figure" to him. He said that Jerry and Denise had always let Kimberly live with them rent and expense free and that "whenever my mother got married, she would move in whoever she got married, and my grandparents usually ended up supporting them as well."

Dylan lived with his grandparents until June 2018, when Kimberly took Craig's side after an argument with Dylan, accused him of stealing her inheritance, and arranged for him to live with his biological father in Riverside. After the move, Kimberly prohibited Dylan from visiting his grandparents at their home in Nuevo, California, but Jerry and Denise would regularly drive to Riverside to visit him. After Kimberly and Craig moved out of Jerry and Denise's house in August 2018, Dylan began staying with his grandparents half of the time. With Kimberly and Craig gone, "it was a lot more calm[]," and Jerry and Denise were "happy."

9

After Denise passed away, Dylan got permission from his father to move in with Jerry full time so that Jerry did not have to live alone. After the move, Kimberly constantly reminded Dylan that she had custody of him and "would threaten to have the cops take me out of my grandparents' house in handcuffs or have me removed." Dylan was living with Jerry when Kimberly filed the petition to appoint a conservator for Jerry and when she initiated this lawsuit. Jerry told Dylan that he had never promised Kimberly his estate and that he was "devastated" that she had resorted to litigation.

E.  *Aleksic's testimony*

Aleksic testified that he had been Jerry's tax preparer since 2010. In February 2018, Jerry asked him to prepare an amendment to his trust that would make Dylan the sole beneficiary and Aleksic the successor trustee. Asked what prompted the amendment, Aleksic said that Jerry and Denise told him that "they were unhappy with Kimberly and with Craig, and that there was just a lot of tension in the home, and they did not like the behavior of Kimberly and Craig in their home." They also told him that the only reason that they were tolerating Kimberly and Craig in their home was "so that they could keep Dylan in close proximity to them because they loved him."

F.  *Craig's testimony*

Craig testified that he heard Jerry and Denise promise Kimberly their estate "more than a dozen" times. The first time he heard about the promise was at a family barbeque on July 4, 2015, about 10 days after he started dating Kimberly. According to Craig, Jerry said that "[e]verything he owned" was going "to Kimberly because she's taking care of his wife." Craig had no idea how many assets Jerry and Denise owned until

10

"Denise started talking, and she had diarrhea of the mouth, and let it all out—the Hawaii house, the million-dollar IRA account that I seen with my own eyes, the Burbank house that was sold. Everything."

Craig acknowledged that he never paid rent while he and his children lived with Jerry and Denise. Asked to describe the type of care Kimberly provided for her parents, Craig said that "she would make breakfast, a large breakfast for everybody to, say, get some food. She would clean the house. She would get her mother medicine. She would get her father hopefully to take a shower because he was not showering. Stuff like that, to where the household would be more normal, if you will."

On cross-examination, Craig said that the only reason he stipulated to a stay-away order was to "keep my gun rights." Asked why his mother had called Wong after Jerry died, Craig replied, "Because Kimberly was very upset and distraught because her father promised her for so many years and ended up . . . reneging on his promise and gave it to someone who did absolutely nothing for that family."

III.    *The Court's Ruling*

In a written statement of decision, the trial court ruled against Kimberly on each of her claims. As to the promissory estoppel claim, the court concluded that it failed for the following reasons.

First, the court found that there was "no credible evidence that Jerry or Denise promised Kimberly that she would be the sole beneficiary of their trusts if she took care of them." The court found that Kimberly was an unreliable witness and that her "testimony about the promises Jerry allegedly made to her about his estate and the trust

11

were not credible." The court stated that Kimberly "contradicted herself on numerous occasions and would routinely change her testimony to suit the pending question." The court also found that she "blatantly lied" when testifying about the trustee's deed to the Hawaii property: "Kimberly testified that Jerry gave her that trustee's deed in December 2010 or January 2011 as proof of Jerry's promise that Kimberly was the sole beneficiary and sole successor trustee to the Jerry Trust. . . . [But] it would have been impossible for Jerry to give Kimberly a trustee's deed in 2010 that referenced Kimberly as Kimberly 'Wilhite' when she did not even meet Craig until four or five years in the future. . . . Kimberly could not provide any explanation as to who prepared [the deed] or how it was prepared. There is no evidence to suggest that Jerry or Denise authorized the preparation of this trustee's deed. . . . It should also be noted that Rodwin Wong, who prepared all of the other recorded documents for the Hawaii property, testified that he did not prepare this trustee's deed. Thus, it appears as though Kimberly unilaterally recorded this trustee's deed . . . without Jerry or Denise's consent, without the assistance of an attorney, and without any authority as a trustee." Based on that adverse credibility determination, the court concluded that Kimberly failed to prove the existence of an oral promise by clear and convincing evidence, as required by Probate Code section 21700, subdivision (a)(4).

Second, the court concluded that even if Kimberly had proved the existence of the alleged oral promise, promissory estoppel requires the promisee to perform in "good faith," and the videos Kimberly introduced into evidence, along with the records from the

12

domestic violence restraining order case, "show that Kimberly abused and mistreated Denise and Jerry."

Third, the court concluded that Kimberly failed to prove that she relied on the alleged oral promise to her detriment. The court stated that it did not believe Kimberly's testimony that she was unable to pursue a career from 2010 to 2015 because of caretaking responsibilities, and the court instead found "that Kimberly did not want to work; it had nothing to do with taking care of Denise."

The court entered judgment in favor of defendants on all of Kimberly's claims, and Kimberly appealed.

DISCUSSION

Kimberly raises several challenges to the trial court's ruling on her promissory estoppel claim. Each of them lacks merit.

First, Kimberly argues that reversal is required because the record contains substantial evidence to support her promissory estoppel claim. To demonstrate her point, she identifies the evidence from trial that she believes "clearly show[s] that a promise was made and [that she] relied upon that promise." Kimberly misunderstands the applicable standard of review on appeal.

As the plaintiff, Kimberly bore the burden of proving the existence of the alleged oral promise by clear and convincing evidence. (Evid. Code, § 500; Prob. Code, § 21700, subd. (a)(4).) The trial court concluded that Kimberly failed to carry that burden. Specifically, the court found Kimberly to be an unreliable witness, did not believe her testimony that Jerry promised her his estate in exchange for her caretaking

13

services, and concluded that there was "no [other] credible evidence" that Jerry made such a promise.

"[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels* a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, italics added, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) Thus, in order to prevail on appeal, Kimberly must demonstrate that the evidence supporting her promissory estoppel claim was "uncontradicted and unimpeached" and "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" in her favor. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571.) Kimberly does not make that showing, nor can she. The only evidence of the alleged oral promise came from testimony that the trial court did not find credible, and we do not reevaluate credibility on appeal. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 ["We do not reweigh evidence or reevaluate a witness's credibility"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)

Kimberly argues that the 2010 amendment to Jerry's trust is proof of an oral promise, but there is no evidence that Jerry ever signed the long form version of that amendment. That is the only version that lists Kimberly as the sole beneficiary. And in any event, the unsigned long form version does not mention a promise. Rather, it merely names Kimberly as the sole beneficiary, which is not the same thing as promising to give her the entire estate in exchange for services rendered.

14

For all of these reasons, the evidence in support of the promissory estoppel claim was not uncontradicted, unimpeached, and of such a character and weight as to compel a finding that Jerry promised to leave his estate to Kimberly if she took care of him and Denise. Kimberly's argument therefore fails.

Second, Kimberly challenges the trial court's finding that she performed her caretaking responsibilities in bad faith because she "abused and mistreated Denise and Jerry." She argues that the court's "finding of abuse" exceeded the court's "subject matter jurisdiction" and "violated principles of res judicata and issue preclusion," because the commissioner who denied Denise's request for a permanent domestic violence restraining order had already determined "that no abuse occurred." According to Kimberly, the trial court "had no formal training to determine what abuse is" and "should have known [that it] was bound by [the commissioner's] determination of fact." The argument lacks merit.

As an initial matter, because this case does not involve the same parties or issues as the domestic violence restraining order case, neither res judicata nor collateral estoppel applies to the trial court's ruling. (See generally *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 147 [discussing the requirements of both doctrines].) But even if we assume for the sake of argument that the court erred by finding that Kimberly performed her caretaking responsibilities in bad faith, her argument would still fail, because the court concluded that her claim failed for the additional, independent reason that she did not prove the existence of the alleged oral promise. "Even when error is demonstrated, the judgment will not be reversed unless it is 'reasonably probable that a result more favorable to the

15

appealing party would have been reached in the absence of the error.'" (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162; see Cal. Const., art. VI, § 13.) Because Kimberly has not shown any error in the court's alternate ground for ruling against her, she cannot demonstrate that she was prejudiced by any error in the court's finding that she abused and mistreated her parents. (See *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [appellant bears the burden of showing prejudice, and "[i]njury is not presumed from error"]); *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126 [affirming the judgment where the appellant failed to demonstrate that the alternate ground for the court's ruling was erroneous].)

Third, Kimberly argues that the trial court applied the wrong legal standard when concluding that she failed to prove detrimental reliance. She contends that the court incorrectly believed that the law requires proof that she gave up a job to care for Denise, whereas all the law requires is that she changed her course of action. To support her argument, Kimberly summarizes the facts of several published cases in which the plaintiffs proved detrimental reliance by showing that they changed their course of action, and she asserts that her evidence was at least as strong as the evidence in those cases. The argument fails for the same reason as her previous argument: Even if Kimberly could demonstrate error in the court's conclusion regarding detrimental reliance, she would not be able to demonstrate prejudice, because the court also concluded that she failed to prove another element of the claim—the existence of a promise. (*Garcia v. World Savings, FSV* (2010) 183 Cal.App.4th 1031, 1044.) In addition, Kimberly's argument is based on a mischaracterization of the court's ruling. The court did not reject

16

Kimberly's claim of detrimental reliance on the ground that Kimberly's testimony was credible but failed to meet a particular legal standard. Rather, the court rejected the claim of detrimental reliance because the court found that Kimberly's testimony was not credible. Kimberly's argument concerning the proper legal standard for detrimental reliance thus fails to show that the court erred.

Fourth, Kimberly argues that the trial court abused its discretion by basing its ruling on two documents that were not in the record. The first document is the trustee's deed for the Hawaii property, which was identified as Exhibit 33 and was discussed during Kimberly's and Wong's testimony but was never admitted into evidence. Kimberly contends that the court improperly relied on the deed to conclude that she "blatantly lied" about the circumstances under which she received it. We disagree. The court did not need to rely on the deed itself, because the court could make its adverse credulity determination solely on the basis of Kimberly's and Wong's testimony about the deed. Wong testified that he did not recognize the deed, and Kimberly acknowledged that the deed was dated December 1, 2010, and that the deed listed her last name as "Wilhite" even though she did not meet Craig until 2015. That testimony alone was more than sufficient to support the court's determination that Kimberly was not testifying truthfully when she said that Wong drafted the document for her parents in 2010.

Kimberly also claims that the court's tentative ruling improperly relied on a "declaration from Jerry" that does not appear in the record. Again, we disagree. In its tentative ruling, as part of its observation that Kimberly had not cared for her parents "in good faith," the court stated that it recalled "seeing something" that Jerry had submitted

17

in the case, possibly a "declaration," indicating that he and Denise "felt like prisoners in their own house." The quote about feeling like "prisoners in their own house" comes from Denise's declaration in support of her request for a domestic violence restraining order, which was admitted at trial. Thus, the court was not relying on extra-record evidence but merely misspoke.

Finally, we reject Kimberly's attempt to argue that the 2018 trust amendment was the product of undue influence or lack of capacity. Before trial, the parties stipulated that any challenges to the validity of the trust were not at issue in this case and were reserved for the proceedings before the probate court.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MENETREZ _____
                                                 J.

We concur:


MILLER _____
      Acting P. J.


FIELDS _____
           J.